# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3066

_____

United States of America,                *
                                          *
        Plaintiff-Appellee,               *
                                          *
    v.                                    *
                                          *
Rex Ronald Webb,                          *
                                          *
        Defendant-Appellant.              *

                                              Appeals from the United States
                                              District Court for the Eastern
_____                                   District of Arkansas.

No. 99-3357

_____

                                          *
United States of America,                 *
                                          *
        Plaintiff-Appellant,              *
                                          *
    v.                                    *
                                          *
Rex Ronald Webb,                          *
                                          *
        Defendant-Appellee.               *

_____

Submitted:  April 11, 2000
Filed:  June 2, 2000

_____

Before WOLLMAN, Chief Judge, MURPHY, Circuit Judge, and GOLDBERG, Judge.[1]

_____

MURPHY, Circuit Judge.

Rex Ronald Webb, the Sheriff of Independence County, Arkansas, was convicted under 18 U.S.C. § 242 (1994) of violating the civil rights of Vickie Hawkins by sexually assaulting her and soliciting sexual favors from her. The district court sentenced him to ten months, split evenly between incarceration and home detention. On appeal Webb argues that the court erred by admitting hearsay testimony during the trial and by sentencing him incorrectly. The government argues in its cross appeal that the court should have applied a sentencing enhancement under U.S.S.G. § 2H1.1 for the use of force during the offense. We affirm in part and reverse in part.

Vickie Hawkins testified at trial that she went to see Sheriff Webb because she was concerned that her husband was violating a restraining order that had been issued to protect her. She first went to Webb's office on or about June 18, 1997, to ask for his help in enforcing the order, and she reported that he told her he would help if she would do what he wanted sexually. While she was alone with the sheriff in his office, he sat down beside her and began to stroke her leg. He then pulled back her shirt to look at a tattoo on her upper chest and asked her if she had anything else she would like to show him. Webb suggested they go to a motel out of town and tried to kiss her. She reported the incident to Kay Wilkins and Debbie Shaver at the Family Violence Prevention Shelter, and Wilkins contacted the Federal Bureau of Investigation (FBI). The FBI interviewed Hawkins, and she agreed to return to Webb's office with a tape recorder. She did so on July 30, 1997, when she repeated her concerns about her

_____

[1]The Honorable Richard W. Goldberg, Judge of the U.S. Court of International Trade, sitting by designation.

husband. While Hawkins was in his office, Webb closed the door and stepped up behind her and massaged her shoulders, then slid his hands down her shirt and onto her breasts, and began to kiss her neck. Hawkins complained and pushed Webb's hands away, but he pulled her over to a small couch where he pushed her down flat and laid his 370 pound body over her. The tape indicates that she repeated her need for help with the restraining order, and Webb said "I'll help you" and "[y]ou're talking to the right guy." He suggested they go to a motel room so that "they could get naked" and stroked and fondled her body. When he got up to lock the door, Hawkins stood up. Webb turned around with his penis exposed, grabbed Hawkins' hand, placed it on his penis, and asked her for oral sex. She refused and pulled away. Webb allowed her to leave.

A federal grand jury issued an indictment charging Webb with one count of sexual assault and solicitation of sexual favors on July 30, 1997, and the government subsequently filed a superseding indictment that charged an additional count based on the first incident on June 18, 1997. Up until just before the time of the superseding indictment, the government had indicated to Webb that the first assault had taken place on June 23, 1997. Webb had informed the government that he had been at a sheriffs' convention in Georgia on that date.

At trial the government introduced the tape made during Hawkins' visit to Webb's office on July 30 and called her as a witness. It also called three FBI agents, who testified about the circumstances surrounding the tape recording, and Wilkins and Shaver from the women's shelter. Webb objected to the latter testimony on hearsay grounds. The government offered the testimony under Federal Rule of Evidence 801(d)(1)(B) as evidence of prior consistent statements by Hawkins, to counter Webb's contention that she had fabricated her story and changed the date of her first visit to June 18 after learning that he had been out of town on June 23. Webb argued that the evidence was actually offered to bolster Hawkins' overall testimony since the witnesses could not testify to the exact date of her first visit. The district court permitted the

testimony, and Wilkins and Shaver testified that Hawkins had told them about her first visit to Webb's office when he had promised to make sure that her husband complied with the restraining order if she would have sex with him. The jury found Webb not guilty on count one of the superseding indictment and guilty on count two, which charged an offense on July 30. Webb moved for judgment of acquittal or a new trial, and the district court denied the motion.

The court sentenced Webb to ten months, with five months imprisonment and five months home detention. The court used a base offense level of 6 under U.S.S.G. § 2H1.1(a)(4) and applied a six level specific offense characteristic enhancement under U.S.S.G. § 2H1.1(b)(1), which provides an enhancement for an offense committed by a public official or someone acting under the color of law. Webb's adjusted offense level combined with his criminal history category of Éresulted in a guidelines range of 10-16 months, and the court sentenced him within that range. Webb claimed that the Sentencing Commission should not have precluded straight probation for the offense of which he was convicted and that the specific offense characteristic enhancement constituted double counting because the "acting under color of law" factor had already been built into the base offense level. The government argued on the other hand that Webb's base offense level should be 10 under U.S.S.G. § 2H1.1(a)(3)(A), because he had used force during the assault. Webb's motion for reconsideration of sentence was denied.

On appeal Webb repeats his arguments about hearsay evidence and sentencing errors. The government filed a cross appeal, contending that the district court incorrectly assumed that "use or threat of force" under U.S.S.G. § 2H1.1(a)(3)(A) requires violence and that it consequently erred by assessing a base offense level of 6 instead of 10. We review admission of challenged testimony for abuse of discretion. See United States v. Bad Wound, 203 F.3d 1072, 1075 (8th Cir. 2000). We review the district court's factual findings in sentencing for clear error and its application of the guidelines de novo. See United States v. Hunt, 171 F.3d 1192, 1195-96 (8th Cir.

1999).

Webb contends that the district court abused its discretion in admitting the testimony of Wilkins and Shaver and that admission of the evidence was not harmless error. At trial the defense attacked Hawkins about her recollection of the date of her first visit to Webb's office, questioning whether the visit had taken place at all and suggesting that she had changed her mind about the date once she learned that Webb had an alibi for June 23. To rebut the implication that she had fabricated the first visit, Hawkins called Wilkins and Shaver to testify that she had told them on June 25 that Webb had sexually assaulted her and that he had told her that he would help enforce the restraining order against her husband if she would give him sexual favors. The district court overruled Webb's hearsay objection and admitted the evidence under Rule 801(d)(1)(B).[2] We find no abuse of discretion. The evidence was admissible under the rule even if the witnesses could not testify to the exact date of the sexual assault Hawkins had described. Moreover, any error would have been harmless because Webb was acquitted on the count about which they testified.

Both sides contest the district court's application of U.S.S.G. § 2H1.1,[3] the

---

[2]Rule 801(d)(1)(B) provides that a prior statement by a witness is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . ."

[3]**Offenses Involving Individual Rights**
(a)     Base Offense Level (Apply the Greatest):
    (1)     the offense level from the offense guideline applicable to any underlying offense;
    (2)     **12**, if the offense level involved two or more participants;
    (3)     **10**, if the offense involved (A) the use or threat of force against a person; or (b) property damage or the threat of property damage; or

guidelines section for offenses involving individual rights. Webb argues that the six level enhancement under U.S.S.G. § 2H1.1(b) amounted to improper double counting because the statute under which he was convicted, 18 U.S.C. § 242, already required conduct under color of law.[4] The § 2H1.1(b) enhancement has two parts, however, one of which applies if the defendant was a public official at the time of the offense. Webb stipulated that he was a public official at the relevant time, and his sentence was properly enhanced six levels under U.S.S.G. § 2H1.1(b)(1)(A). We agree with the Second Circuit that in such circumstances the enhancement is "justified on the wholly independent ground that [the defendant] was a 'public official' at the time of the offense [under U.S.S.G. § 2H1.1(b)(1)(A)]." United States v. Livoti, 196 F.3d 322, 327 (2d Cir. 1999), petition for cert. filed, 68 U.S.L.W. 3535 (U.S. Feb. 3, 2000) (No. 99-1344).

Webb also argues that because his offense is a misdemeanor, he should have been eligible for straight probation and the Sentencing Commission should not have precluded that option for misdemeanors within Zone C of the Sentencing Table. See U.S.S.G. § 5C1.1(d) (Zone C sentences must include a term of imprisonment). This argument is without merit, and Webb cites no authority for it. Congress gave the Commission broad authority to promulgate the Sentencing Guidelines. See 28 U.S.C.

---

        (4)    **6**, otherwise.
    (b)    Specific Offense Characteristics
        (1)    If (A) the defendant was a public official at the time of the offense; or (B) the offense was committed under color of law, increase by **6** levels.

U.S.S.G. § 2H1.1.

    [4]18 U.S.C. § 242 provides: "Whoever, under color of any law . . . willfully subjects any person in any State . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . . shall be fined under this title or imprisoned not more than one year, or both . . . ."

§ 994(a) (1994); <u>Mistretta v. United States</u>, 488 U.S. 361, 377 (1989).  In <u>United States v. Barrett</u>, 937 F.2d 1346, 1350 (8th Cir.), <u>cert. denied</u>, 502 U.S. 916 (1991), we concluded that while Congress authorized the Commission to make probation available for some crimes, "it did not require probation to be made available."  Other courts have reached the same conclusion.  <u>See</u> <u>United States v. Lueddeke</u>, 908 F.2d 230, 232-33 (7th Cir. 1990); <u>United States v. Ortez</u>, 902 F.2d 61, 65-66 (D.C. Cir. 1990), <u>overruled on other grounds by</u> <u>In re Sealed Case (Sentencing Guidelines' "Substantial Assistance")</u>, 149 F.3d 1198 (D.C. Cir. 1998); <u>United States v. Belgard</u>, 894 F.2d 1092, 1099-1101 (9th Cir.), <u>cert. denied</u>, 498 U.S. 860 (1990); <u>United States v. Erves</u>, 880 F.2d 376, 380 (11th Cir.), <u>cert. denied</u>, 493 U.S. 968 (1989); <u>United States v. White</u>, 869 F.2d 822, 827 (5th Cir.), <u>cert. denied</u>, 490 U.S. 1112 and 493 U.S. 1001 (1989).

The government appeals the sentence imposed by the district court, arguing that the wrong standard was applied in judging whether force had been used or threatened.  Section 2H1.1(a)(3)(A) provides in part that the base offense level should be 10 if the offense involved "the use or threat of force against a person."  The presentence report had recommended using a base offense level of 10 in calculating the sentence, but Webb objected that he had not used force.  In considering the question, the district court interpreted the guideline term "use or threat of force" to require the use of violence and found that Webb had not used violence.  The court therefore used a base offense level of 6.  It equated the use or threat of force with violence several times during the sentencing proceeding, <u>see</u> Sentencing Tr. at 5, 8-9, 14-15, and stated that "I just don't think that there was that type of force which, to me, would be something that almost equated with rape, and I just don't think you had that in this case," <u>id.</u> at 15.

No published case has construed the term "use or threat of force" in the specific context of § 2H1.1(a)(3)(A), but we have considered similar language in other contexts.  For example, 18 U.S.C. § 2244(a)(1) prohibits sexual contacts made "by using force" against another person.  <u>See</u> 18 U.S.C. § 2241(a)(1) (1994).  That statute does not

define the term "force," but courts have concluded that the force requirement is satisfied by "the use of such physical force as is sufficient to . . . restrain . . . a person." United States v. Fire Thunder, 908 F.2d 272, 274 (8th Cir. 1990) (internal quotations and citation omitted). We have "repeatedly held that force sufficient to prevent the victim from escaping the sexual contact satisfies the force element." United States v. Allery, 139 F.3d 609, 611 (8th Cir.), cert. denied, 524 U.S. 962 (1998) (construing 18 U.S.C. §§ 2241(a)(1), 2244(a)(1)). In Allery, force was found where the defendant "l[aid] on top of [the victim] and resist[ed] her attempts to push him away . . . ." Id. at 612. A disparity in size between the defendant and the victim "might be enough, in itself, to establish 'a restraint . . . that was sufficient that the [victim] could not escape the sexual contact.'" United States v. Bordeaux, 997 F.2d 419, 421 (8th Cir. 1993) (internal quotations omitted). Other circuits have interpreted force in the same way as Allery and Bordeaux. The Fifth Circuit has said that a defendant uses force "when he employs restraint sufficient to prevent the victim from escaping the sexual conduct. Furthermore, force can be implied from a disparity in size and coercive power between the defendant and his victim, as for example when the defendant is an adult male and the victim is a child." United States v. Lucas, 157 F.3d 998, 1002 (5th Cir. 1998) (citations omitted) (construing 18 U.S.C. § 2241(a)(1)). The Second Circuit also has explicitly rejected a violence requirement, holding that "[18 U.S.C. § 2244(a)(1)] requires only the use of 'force,' not of 'significantly violent action or threats.'" United States v. Lauck, 905 F.2d 15, 18 (2d Cir. 1990). These precedents are helpful in considering the meaning of "force" in the guidelines section which also does not define the term.

We conclude that the proper standard under § 2H1.1(a)(3)(A) for judging whether the defendant used or threatened force during a sexual assault is whether any force involved was "sufficient to prevent the victim from escaping the sexual contact . . . ." Allery, 139 F.3d at 611. Since the district court applied a different standard, we remand the case with directions that the district court reconsider Webb's base offense level in light of the definition of force discussed above. In so remanding, we recognize

the district court's vantage point in judging the credibility and demeanor of the witnesses, in observing the disparity in size between Webb and Hawkins, and in assessing the coercive power, physical and psychological, that Webb may have possessed by virtue of that disparity in size and by virtue of the office he held.

For these reasons, we affirm Webb's conviction but remand for resentencing.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.