# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3143

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Arkansas. |
| Rex Ronald Webb, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: April 11, 2001

Filed: June 11, 2001

_____

Before WOLLMAN, Chief Judge, MURPHY, Circuit Judge, and GOLDBERG,[1] Judge.

_____

MURPHY, Circuit Judge.

This case is back on a second appeal by the United States from the sentence imposed by the district court. After Rex Ronald Webb, the Sheriff of Independence County, Arkansas, was convicted by a jury of one count of violating the civil rights of Vickie Hawkins by sexually assaulting her and soliciting sexual favors, the district

_____

[1]The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

court sentenced him to ten months, split between incarceration and home detention. Both parties appealed. We affirmed Webb's conviction, but we reversed his sentence and remanded for resentencing under the correct standard for use of force during the offense. See United States v. Webb, 214 F.3d 962, 966 (8th Cir. 2000) (Webb I). On remand the district court again imposed a ten month split sentence, and the United States appeals. We reverse.

Webb was indicted on two counts of sexual assault and solicitation of sexual favors while acting under color of law in violation of 18 U.S.C. § 242,[2] and he was convicted of a count alleging violation of the statute on July 30, 1997.[3] Vickie Hawkins testified at trial about what happened when she first went to the sheriff's office on or about June 18, 1997, to seek Webb's assistance in protecting her from an abusive husband who had violated a temporary restraining order. She told Webb that she was concerned that her husband was receiving favorable treatment from the sheriff's office. While she talked, Webb sat down beside her, stroked her leg, and pulled back her blouse to look at her breasts. Hawkins left the office and later reported the incident to two counselors at a domestic violence shelter, and the director contacted the Federal Bureau of Investigation (FBI) about it.

FBI agents interviewed Hawkins and asked her to return to Webb's office with a hidden tape recorder in her purse. She agreed and went to the sheriff's office on July 30 and again talked to Webb about her husband and the restraining order. During the conversation, Webb closed the door and started to massage Hawkins's shoulders,

---

[2]18 U.S.C. § 242 provides in relevant part: "Whoever, under color of any law willfully subjects any person in any State . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . . shall be fined under this title or imprisoned not more than one year, or both . . ."

[3]Webb was acquitted of a count charging an offense on or about June 18, 1997.

fondle her breasts, and kiss her neck. Hawkins complained and pushed Webb's hands away. When she stood up from the chair, the sheriff shoved her down onto a nearby love seat and got on top on top of her. Hawkins testified that he "wouldn't let [her] up." (Trial Tr. 85-86, 135). At the time of the assault, Webb weighed approximately 370 pounds, some 220 pounds more than Hawkins. While lying on top of her, Webb stroked and fondled her body and suggested they go to a motel room to "get naked." He told her that she was "talking to the right guy" about her problems. Hawkins was able to get up from the couch when the sheriff stood up and went to the door to lock it. He turned back from the door with his penis exposed and grabbed Hawkins's hand, placed it on his penis, and asked her to perform oral sex. Hawkins refused and pulled her hand away. Webb then allowed her to leave the office.

After Webb's conviction by a jury, a presentence report was prepared. The report set the base offense level at 10 for use of force during the assault. See U.S.S.G. § 2H1.1(a)(3)(A) (base offense level of 10 applies if offense involves "the use or threat of force against a person").[4] Webb objected that he had not used force and that the base offense level should therefore be 6. The district court interpreted the term "use

---

[4] U.S.S.G. § 2H1.1 is the guideline section for offenses involving indivudal rights:

  (a)    Base Offense Level (Apply the Greatest):
      (1)    the offense level from the offense guideline applicable to any underlying offense;
      (2)    12, if the offense involved two or more participants;
      (3)    10, if the offense involved (A) the use or threat of force against a person; or (B) property damage or the threat of property damage; or
      (4)    6, otherwise.

  (b)    Specific Offense Characteristic
      (1) If (A) the defendant was a public official at the time of the offense; or (B) the offense was committed under color of law, increase by 6 levels.

. . . of force" to require violence, found that Webb had not used violence, and set the base offense level at 6 under U.S.S.G. § 2H1.1(a)(4). After adding a 6 level enhancement under U.S.S.G. § 2H1.1(b)(1), for an offense committed by a public official or someone acting under color of law, the court calculated Webb's adjusted offense level to be 12. Webb's criminal history category was I so the resulting guidelines range was ten to sixteen months, but the statutory maximum for violation of 18 U.S.C. § 242 is twelve months. The court imposed a ten month split sentence.

Both sides appealed. Webb appealed his conviction and his sentence, arguing that the court had erred by admitting hearsay testimony during the trial, that the United States Sentencing Commission should not have precluded straight probation for his offense, and that the enhancement for acting under color of law amounted to double counting because the factor had already been built into the base offense level. The United States cross appealed, arguing that the district court had erred by not finding that force had been used during the assault and by not setting Webb's base offense level at 10, either because he used force during the offense or by use of the base level from the underlying offense under U.S.S.G. § 2H1.1(a)(1).

We affirmed Webb's conviction, but reversed his sentence since the district court had applied an incorrect standard for use of force. We remanded to the district court for resentencing using the proper test, which is "whether any force involved was 'sufficient to prevent the victim from escaping the sexual contact . . . '" Webb I, 214 F.3d at 966 (citing United States v. Allery, 139 F.3d 609, 611 (8th Cir. 1998). We did not discuss the government's alternative argument about application of the offense level from the underlying offense and made no determination about it.

The parties submitted briefs on remand to the district court. The government argued that application of the guidelines should result in an adjusted base offense level of at least 16 and a sentencing range of 21 to 27 months, placing Webb in Zone D of the Sentencing Tables (but subject to the statutory maximum of 12 months). The court

stated during the course of the resentencing hearing that it planned to impose a twelve month split sentence, but the government pointed out that such a sentence was unavailable under U.S.S.G. § 5C1.1(f) ("[i]f the . . . guideline range is in Zone D of the Sentencing Table, the minimum term shall be satisfied by a sentence of imprisonment"). The court responded, "if I can't impose a split sentence by imposing the twelve months, then I am going back to my original sentence." (Sen.Tr. 11-12). The court did not address the governing test for use of force or make relevant findings. The court stated instead that its findings regarding the use of force were "the same as I made in [the original sentencing hearing]." (Sen.Tr. 14).

The district court issued a written order the next day in which it stated that it had reconsidered the question and concluded "that force was not used, even under a broad interpretation of the term." The court stated that its "finding remains the same [as in the original sentencing hearing]. The Sheriff did not use force, or restraint of any kind, in the sexual advance." In remanding we told the district court to consider the disparity in size between Webb and Hawkins, and in its written order it noted that "[i]t is true, as the Court of Appeals pointed out, that the defendant is a very heavy man, but the victim is a rather large person herself." The court also expressed its view that Webb might not have known that his actions were unwelcome.

The government moved the court to reconsider its sentence. It argued that even if the court decided not to apply U.S.S.G. § 2H1.1(a)(3)(A), the same base offense level of 10 would result under U.S.S.G. § 2H1.1(a)(1) and § 2A3.4. With an adjusted offense level of 16, the sentencing range would be 21 to 27 months. The district court denied the motion to reconsider in an order dated August 23, 2000. The order stated in part that "[t]he law of the case precludes switching to §2A3.4" for the "Court of Appeals obviously did not find the government's argument persuasive since the Court remanded the case . . . with no mention whatsoever of §2A3.4." The government says that it first learned of this order when it was referenced in Webb's appellate brief.

The United States argues on its appeal that the district court clearly erred in finding that Webb did not use force in his assault and that it misapplied the guidelines as a matter of law by not borrowing the offense level for the underlying offense as an alternative. Webb responds that the district court correctly applied the Webb I standard and properly found that force was not used. He also contends that Webb I implicitly rejected the argument about the underlying offense level, and that it was therefore foreclosed by the law of the case. We review the district court's legal conclusions de novo, see United States v. Bahena, 223 F.3d 797, 804 (8th Cir. 2000), and its findings of fact for clear error, see United States v. McKinney, 88 F.3d 551, 556 (8th Cir. 1996).

Webb I clarified the standard to be used in deciding whether the sheriff used force during his assault, that is "whether any force involved was sufficient to prevent the victim from escaping sexual contact." Webb I, 214 F.3d at 966 (citations omitted). The district court was told to consider "the disparity in size between Webb and Hawkins, and . . . the coercive power, physical and psychological, that Webb may have possessed by virtue of that disparity in size and by virtue of the office he held" in determining whether he had used force. Webb I, 214 F.3d at 966.

From the record on remand, it appears that the district court was committed to a split sentence[5] and that it declined to apply guidelines which would have resulted in

---

[5]The district court commented during the resentencing hearing:

> I believe in the elective process and I believe people up there elected the sheriff to serve out this term and I believe he ought to serve it out, especially when all he was convicted of was a misdemeanor. I mean, it ain't the crime of the century; it ain't even a felony. So I am going to let him serve out his term. If they want to take an appeal, go ahead and take an appeal. That is the way I feel about it and I feel pretty strongly. I imposed a split sentence before and I don't think they said anything in

a base offense level of 10 after it realized that a split sentence would be precluded by starting the guidelines calculation at that level. See Sen. Tr. 11-12 ("if I can't impose a split sentence by imposing the twelve months, then I am going back to my original sentence"). After thoroughly examining the record, we are convinced that the district court's finding that Webb had not used force during his assault was clearly erroneous. The evidence did not support such a finding. Webb's office door was closed and eventually locked during the July 30 meeting. After Webb proceeded to fondle Hawkins's breasts and kiss her neck and she complained and moved away, he pushed her down on the love seat and laid his 370 pound body on top of her and refused to "let [her] up." (Trial Tr. 85-86, 135). While he was lying on top of her, he insinuated that he would only help her if she cooperated with his advances, telling her that she was "talking to the right guy." When he got up to lock the door, Hawkins was able to escape from the love seat, but then Webb grabbed her hand and placed it on his exposed penis and asked for oral sex. Webb clearly used both physical and psychological coercive power and sufficient force to prevent Hawkins from escaping sexual contact.

Since Webb's offense involved "the use . . . of force against a person," a base offense level of 10 under § 2H1.1(a)(3)(A) should have been used to calculate his adjusted offense level.[6] With the 6 level enhancement required by § 2H1.1(b)(1), the correct adjusted offense level would be 16, precluding a split sentence because of being within Zone D of the Sentencing Table. See U.S.S.G. § 5C1.1(f).

_____

the opinion about a split sentence.

Sen. Tr. 5-6.

[6]Even if force had not been used in the offense, the court would have erred as a matter of law by not applying a base offense level of 10 under U.S.S.G. § 2H1.1(a)(1) & §2A3.4. Section 2A3.4(a)(3) sets the offense level for the underlying offense of abusive sexual conduct at 10.

We accordingly reverse and remand to the district court with instructions to sentence Webb to twelve months imprisonment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.