RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0041p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

          *Plaintiff-Appellee,*

    *v.*

JOHN R. TOLBERT, JR.,

          *Defendant-Appellant.*

No. 10-6467

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 10-00030-001—Curtis L. Collier, Chief District Judge.

Argued: November 16, 2011

Decided and Filed: February 10, 2012

Before: MARTIN and GIBBONS, Circuit Judges; STEEH, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Francis L. Lloyd, Jr., LAW OFFICE OF FRANCIS L. LLOYD, JR., Knoxville, Tennessee, for Appellant. James E. Arehart, ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee. **ON BRIEF:** Francis L. Lloyd, Jr., LAW OFFICE OF FRANCIS L. LLOYD, JR., Knoxville, Tennessee, for Appellant. James E. Arehart, Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEYS, Lexington, Kentucky, for Appellee.

_____

**OPINION**

_____

JULIA SMITH GIBBONS, Circuit Judge. Defendant-Appellant John Tolbert, Jr. pled guilty to a charge of assaulting a federal officer, resulting from an incident in

_____

[*] The Honorable George C. Steeh III, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

which he struck a Deputy United States Marshal in the head with a plastic water pitcher at the conclusion of another trial.  At sentencing, the district court found that the pitcher constituted a "dangerous weapon" under the circumstances, and it applied the recommended four-level enhancement under U.S.S.G. § 2A2.2(b)(2)(B).  On appeal, Tolbert argues that the examples given in the definition of what constitutes a dangerous weapon should be read as limiting and that the plastic water pitcher used in the incident was incapable of causing serious bodily injury.  For the reasons that follow, we affirm the sentence imposed by the district court.

I.

On October 21, 2009, at the conclusion of a jury trial in which Tolbert was convicted of knowingly possessing an unregistered firearm, the district court dismissed the jury, set a sentencing date, and adjourned court.  Deputy United States Marshal Kevan Thompson approached Tolbert while another marshal instructed Tolbert to place his hands behind his back in preparation to be handcuffed.  Tolbert did not comply. Instead, Tolbert grabbed a water pitcher that was sitting on the defense table and struck Thompson in the head with it.  After being subdued and secured, Tolbert was led from the courtroom.  Thompson did not sustain any serious injury, nor did he seek medical attention.

Tolbert was indicted for assaulting a federal officer, in violation of 18 U.S.C. §§ 111(a)(1) and 1114.  Tolbert entered a plea of guilty, which was accepted by the district court on June 29, 2010.  The presentence investigation report ("PSR") recommended a four-level enhancement under U.S.S.G. § 2A2.2(b)(2)(B) for use of a dangerous weapon in the assault of Thompson.  The PSR references U.S.S.G. § 2A2.2 Application Note 1, which provides that a dangerous weapon includes any instrument that is not ordinarily used as a weapon if such an instrument is involved in the offense with the intent to commit bodily injury.  Tolbert objected to this dangerous weapon enhancement, arguing that the water pitcher was not capable of causing death or serious bodily injury.  The probation officer responded that the plastic water pitcher was used as an improvised blunt impact weapon and was "absolutely capable of causing serious

bodily injury or death." The PSR recommended a sentence of thirty to thirty-seven months of imprisonment.

FBI Agent David Bukowski testified at the sentencing hearing that the water pitcher was made out of a very hard plastic that was intact before the incident. After the incident, the plastic casing on the water pitcher was cracked. The record suggests that the water pitcher had been filled prior to the court proceeding, but it is unclear how much water, if any, remained in the pitcher at the time of the assault. The pitcher was roughly estimated to have a height of about ten inches, with a handle of six inches, and a circumference of about twelve inches. It was estimated to weigh about half of a pound to a pound when empty. Bukowski testified that Tolbert was standing, raised the pitcher over his head, and struck Thompson in the head, delivering a "substantial blow." On cross-examination, Bukowski conceded that the pitcher had fallen to the carpeted floor during the incident; that Thompson did not sustain any serious injury nor did he seek medical attention; that Thompson resumed his duties immediately and helped escort Tolbert out of the courtroom; that Tolbert apologized to Thompson later that day; and that Thompson did not provide a victim impact statement.

After Bukowski's testimony and argument from both parties, the district court denied Tolbert's objection to the application of the U.S.S.G. § 2A2.2(b)(2)(B) enhancement. The court arrived at this decision by looking at the circumstances of the incident, considering "what the object was, how the object was used, and what was the intent of the person [using it]," as well as the part of the body on which the weapon was used The court concluded that the water pitcher did constitute a dangerous weapon and that it was used in such a manner as to demonstrate an intent to commit bodily injury. The district court ultimately sentenced Tolbert to a thirty-seven month term of imprisonment.

II.

"When reviewing the district court's application of the Sentencing Guidelines, we review the district court's factual findings for clear error and mixed questions of law and fact *de novo*." *United States v. May*, 568 F.3d 597, 604 (6th Cir. 2009) (citing *United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005)). The district court's interpretation of the Sentencing Guidelines is reviewed *de novo*. *United States v. Anglin*, 601 F.3d 523, 526 (6th Cir. 2010) (citation omitted). If the district court correctly interpreted the Sentencing Guidelines, its finding that the water pitcher constituted a dangerous weapon capable of inflicting serious bodily harm is a factual finding, which is reviewed for clear error. "A finding is clearly erroneous where, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Webb*, 616 F.3d 605, 609 (6th Cir. 2010) (citation and internal quotation marks omitted).

Tolbert argues that the plastic water pitcher that he used to commit his offense was not a dangerous weapon under Section 2A2.2(b)(2)(B) of the Sentencing Guidelines, and, therefore, the four-level enhancement that was applied pursuant to this provision was not justified. A "dangerous weapon" under this guideline is defined as having "the meaning given that term in § 1B1.1, Application Note 1, and includ[ing] any instrument that is not ordinarily used as a weapon (e.g., a car, a chair, or an ice pick) if such an instrument is involved in the offense with the intent to commit bodily injury." U.S.S.G. § 2A2.2, Application Note 1. The incorporated definition from Section 1B1.1 states that a "dangerous weapon" means:

> (i) an instrument capable of inflicting death or serious bodily injury; or
> (ii) an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument (e.g. a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun).

U.S.S.G. § 1B1.1, Application Note 1(D). Further, "serious bodily injury" is defined as "injury involving extreme physical pain or the protracted impairment of a function of a

bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1, Application Note 1(L). Finally, application of the Section 2A2.2 dangerous weapon enhancement requires a showing that the instrument was used with the intent to commit bodily injury. "Bodily injury" is defined as "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1, Application Note 1(B).

It is uncontested that Thompson did not actually suffer serious bodily injury as a result of Tolbert's assault with the plastic water pitcher. The issue is whether this plastic water pitcher was *capable of* inflicting a serious bodily injury. The standard for assessing this question is an objective one. *See United States v. Rodriguez*, 301 F.3d 666, 668 (6th Cir. 2002) (citation omitted) (holding that an objective standard applies in determining whether an object may be considered a dangerous weapon for the purpose of the robbery guideline, U.S.S.G. § 2B3.1(b)(2)(E), which incorporates the same dangerous weapon definition from U.S.S.G. § 1B1.1, Application Note 1(D)). "The ultimate inquiry is whether a reasonable individual would believe that the object is a dangerous weapon [*i.e.*, capable of inflicting serious bodily injury] under the circumstances." *Id.* (citations omitted).

Tolbert argues that the fact that the water pitcher did not cause serious bodily injury in this incident is evidence that this object is incapable of ever inflicting such serious injury. Although the fact that Thompson suffered no serious injuries from Tolbert's blow provides some evidence of the capabilities of the pitcher as a weapon, the probative value of this evidence is uncertain. One negative result—no serious injury occurring—does not allow one to conclude that the entire class of results will be negative. We are interested in the overall class, which defines what kind of injuries the water pitcher is *capable of* inflicting.

Tolbert further argues that there is no evidence that if he had used better aim, or committed the assault with increased vigor, serious bodily injury of the type described in the Sentencing Guidelines definitions could have resulted. The United States,

however, offered evidence that the water pitcher was made of a very hard plastic material, that it had a six-inch handle, that it weighed about half of a pound to a pound when empty, and that it may have contained some water when it was used to strike Thompson.  These characteristics—the hardness of the object, the increased leverage from the handle, and the increased mass—combine to increase the energy that an attacker would be able to impart when striking a victim.  It is reasonable to infer from this evidence and from common experience, as the district court did, that such a water pitcher, swung with sufficient force and proper aim, was capable of inflicting serious bodily harm as defined by the Guidelines.

Tolbert also argues that making this sort of inference, which concludes that a plastic water pitcher could be a dangerous weapon, would be to treat the definition of dangerous weapons under U.S.S.G. § 2A2.2(b)(2)(B) as encompassing all tangible objects that have a certain weight and can be wielded.  Tolbert asserts that the Guidelines provision's list of examples of objects that are not ordinarily used as weapons but can be considered dangerous weapons if they are used in the offense with the intent to commit bodily injury—a car, a chair, or an ice pick—should be read as limiting.  He cites *Begay v. United States*, 553 U.S. 137 (2008), in support of his argument that, as a principle of construction, a list of examples given after a definition limits the definition and should not be ignored into meaninglessness.  Courts do have a "duty to give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (citations and internal quotation marks omitted).  *Begay* utilized this principle of construction in holding that the example crimes listed in the Armed Career Criminal Act limited the scope of crimes covered under the general catch-all clause to crimes that were similar to the examples themselves.  553 U.S. at 143.

This principle, however, does not apply in the manner advocated by Tolbert to the definition of a "dangerous weapon" under U.S.S.G. § 2A2.2(b)(2)(B).  First, we note that the list of examples of objects not ordinarily used as weapons but which can be dangerous weapons under certain circumstances is set off from the other text of the definition by parentheses and is preceded by an "*e.g.*" signal.  U.S.S.G. § 2A2.2,

Application Note 1. This punctuation and use of the "*e.g.*" signal, which was not found in the statutory clause at issue in *Begay*, suggest that Congress actually intended for these listed examples to be merely illustrative rather than limiting.

Furthermore, Tolbert is able to distinguish a chair from a water pitcher only by their relative "heft." Both objects are not inherently dangerous but can be wielded as blunt impact weapons. In essence, he is arguing that the defining characteristics of a blunt impact weapon are only its size and weight. While most chairs are indeed likely to be more substantial than a plastic water pitcher, chairs are made in many different designs out of many different materials. Some chairs are likely less "hefty" than the water pitcher used in this case. More importantly, limiting the consideration of the dangerousness of a blunt impact weapon solely to its size and weight ignores other important characteristics of the object—such as its shape, hardness, and toughness—that contribute to its potential to cause serious bodily injury. Tolbert's attempt to limit the class of objects similar enough to a chair solely by their "heft" is not justified by the statutory language.

Other circuits have declined to adopt this restrictive interpretation—*i.e*, one limited by the listed examples—of the definition of what constitutes a dangerous weapon under the aggravated assault Guidelines provision. They have adopted a more functional approach that examines how the particular object was used under the circumstances. *See United States v. Perry*, 284 F. App'x 56, 57 (4th Cir. 2008) (holding that a hard plastic food tray, while not inherently dangerous, "was clearly capable of, and did, inflict serious injury" when thrown by an inmate at a correctional officer); *United States v. Serrata*, 425 F.3d 886, 910 (10th Cir. 2005) ("[I]n the proper circumstances, almost anything can count as a dangerous weapon, including walking sticks, leather straps, rakes, tennis shoes, rubber boots, dogs, rings, concrete curbs, clothes irons, and stink bombs.") (citations and internal quotation marks omitted); *United States v. Matthews*, 106 F.3d 1092, 1095 (2nd Cir. 1997) (finding that it is settled law in the Second Circuit and other circuits that almost any object can be a dangerous weapon depending on how it is wielded in the circumstances).

The district court correctly applied this kind of functional analysis, looking at the circumstances in which the water pitcher was used, when it ruled on Tolbert's objection. Contrary to Tolbert's assertions, it was not mere conjecture for the district court to conclude, based on evidence of the characteristics of the water pitcher—including its hardness, size, shape, and weight, the circumstances in which it was used (to strike someone in the head), and common experience, that this object was capable of inflicting serious bodily harm, even though no such harm actually resulted. The district court did not clearly err in concluding that the water pitcher constituted a dangerous weapon under these circumstances and that Tolbert's use of the pitcher to strike Thompson in the head provided sufficient evidence of his intent to inflict bodily injury. The application of the four-level enhancement for use of a dangerous weapon was therefore justified.

After applying this four-level enhancement under U.S.S.G. § 2A2.2(b)(2)(B), the district court ultimately sentenced Tolbert to a thirty-seven month term of imprisonment. Tolbert argues that this sentence was impermissibly based on his rehabilitative needs, which makes his sentence substantively unreasonable. *See Tapia v. United States*, 131 S.Ct. 2382, 2393 (2011) (holding that a court may not impose a sentence for rehabilitative purposes); *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005) (holding that a sentence may be substantively unreasonable if it is based on impermissible factors). While the district court did allude to Tolbert's mental health issues and conclude that he would benefit from treatment, we find that the district court did not impermissibly impose or lengthen Tolbert's sentence to enable him to complete a treatment program or promote his rehabilitation. The district court here failed to make the kind of statements that were made by the district court in *Tapia*, which suggested that it "may have calculated the length of [the] sentence to ensure that [the defendant] receive certain rehabilitative services." 131 S. Ct. at 2392–93 (finding that district court in *Tapia* stated that the "number one" thing was the need to provide treatment and have a sentence of sufficient length for the defendant to complete a 500-hour drug treatment program). Rather, the district court here appears to have selected a within-Guidelines sentence primarily due to the seriousness of the crime, the need for deterrence, and the need to protect the public.

III.

For the reasons provided above, we affirm the sentence imposed by the district court.  The district court correctly interpreted the Sentencing Guidelines when it considered the characteristics of the object and the circumstances in which it was used to determine whether it was a dangerous weapon.  Further, it did not commit clear error in concluding that the plastic water pitcher at issue was capable of inflicting serious bodily injury.  Finally, Tolbert's sentence was substantively reasonable.