<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 19a0120n.06

Case Nos. 17-6391/18-5206

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Mar 14, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| DAMON HICKMAN (17-6391); WILLIAM | ) | KENTUCKY |
| CURTIS HOWELL (18-5206), | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

BEFORE: KEITH, STRANCH, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** This consolidated appeal arises from the beating death of a pre-trial detainee at the Kentucky River Regional Jail ("KRRJ"), at the hands of Damon Hickman and William Curtis Howell, KRRJ supervisory deputy jailers. Hickman pleaded guilty to two counts of willful deprivation of constitutional rights (aiding and abetting), in violation of 18 U.S.C. §§ 242 and 2, and one count of obstruction of justice, in violation of 18 U.S.C. § 1519, and was sentenced to 120 months' imprisonment. Howell was tried by a jury and convicted of two counts of willful deprivation of constitutional rights (aiding and abetting), in violation of 18 U.S.C. §§ 242 and 2, and sentenced to 120 months' imprisonment. They each filed separate appeals.

Hickman argues that the district court erred by granting the government's motion for a downward departure, but then failing to apply an actual reduction to his sentence. Hickman also

challenges the district court's application of the following sentencing enhancements: (1) a four-level sentencing enhancement for use of a dangerous weapon under U.S.S.G. § 2A2.2(b)(2)(B); (2) a seven-level enhancement for inflicting permanent or life-threatening injuries under § 2A2.2(b)(3)(C); (3) a two-level enhancement for the victim being restrained under § 3A1.3; (4) a two-level enhancement for obstruction of justice under § 3C1.1; and (5) a six-level enhancement for acting under color of law under 2H1.1(b)(1). Howell argues that the district court erred by: (1) failing to properly instruct the jury on the subjective aspect of deliberate indifference, and (2) improperly permitting the jury to consider his falsification of two reports as evidence of having a guilty conscience. We affirm as to both defendants.

## I. BACKGROUND

On July 5, 2013, Larry Trent was arrested on a bench warrant and for driving under the influence of alcohol, and was detained at the KRRJ. Trent was initially placed in general population, but after he became confused and disoriented, jailers determined that he was detoxing and moved him to a detox cell for closer observation. On the morning of July 9, 2013, Hickman and Howell arrived for their 7:00 a.m. shift. Howell had a brief encounter with Trent, in which he described Trent as "confused" and "talking out of his head" stating someone was "going to kill [him] in the morning." According to Hickman, Trent was not posing any danger or displaying any signs of aggression, but Hickman "could tell [Trent] was withdrawing from something" because he was "fidgeting" with screws.

Believing Trent should not have a mat or other personal item in his cell at the time, Hickman sought Howell's assistance in removing them. As Hickman and Howell opened Trent's cell, Trent rushed towards them "flailing" his arms, striking Hickman. Hickman responded by punching Trent twice in the face and head, and Howell began tasing Trent. Although Trent initially

went down, he immediately got up and hurried out of the cell towards the booking area of the jail. Howell and Hickman followed behind, and Howell began applying the taser to Trent's lower back. When the taser did not appear to affect Trent, Hickman forced Trent to the ground. Eventually, several other deputy jailers began assisting in restraining Trent.

After Trent was subdued and lying on the floor, Hickman—standing 6'6 tall and weighing nearly 400 pounds—kicked Trent in the torso, leaving an imprint of his boot in Trent's body. With the help of other deputy jailers, Hickman and Howell then carried Trent back to the detox cell. At some point, Trent got a hold of Howell's taser and began deploying it. Because the taser prongs were still attached to Trent, he repeatedly shocked himself. The deputies immediately placed Trent back on the floor outside of the detox cell and retrieved the taser. As several jailers restrained Trent on the floor near the cell, Hickman and Howell continued to punch, kick and stomp Trent. Specifically, Howell repeatedly punched Trent in the head and stomped on Trent's arm, as Hickman continuously shocked Trent with the taser gun. Either Howell or Hickman also kicked Trent in the pelvic area. After placing Trent back in his cell, Howell stepped in the cell and began "kick[ing] [Trent] in the face" with so much force that he left his shoe impression on Trent's head. Hickman and Howell then left Trent in the cell bleeding from an open wound to his face.[1] Neither sought medical assistance for Trent.

Pursuant to KRRJ procedure, jailers must prepare an incident report whenever force is used on an inmate, whether reasonable or not, and a taser report if a taser gun is deployed. The report must include "why [the force] was used" and "any injuries that an inmate sustains" so that incidents involving force "can be investigated and looked at" by the Department of Corrections. Some time after assaulting Trent, Howell completed an incident and taser report. However, Howell failed to

---

[1]Much of the assault was captured on surveillance.

disclose that Hickman kicked Trent in the torso, that Howell punched Trent in the face, or that Howell kicked Trent in the head after placing him back in his cell. Nor did Howell indicate in the report that Trent was bleeding from an open head-wound and was otherwise injured. Howell also called the jail administrator, Tim Kilburn, to report the incident. Howell testified that he informed Kilburn that Trent "had a cut on his head." However, Kilburn's notes reflected that Howell informed him that "no one had any injuries, except for [Howell]" having a "busted lip." Hickman then authored an observation log in which he falsely reported that he checked on Trent numerous times and that Trent was "10-4"—an indication that Trent was okay.

Hours after the assault, a KRRJ maintenance worker discovered Trent unresponsive in his cell. Emergency responders arrived and noted large amounts of blood on the floor, walls, and "sink area" of Trent's cell, and multiple shoe and boot prints on Trent's body. What "stuck out the most" to the emergency technician was the large "boot print" on Trent's chest. Trent was transported to a local hospital, where he was pronounced dead. An autopsy revealed Trent's primary cause of death was hemorrhaging, caused by a displaced pelvic fracture. Blunt force trauma to Trent's head, trunk and extremities also contributed to his death. On October 27, 2015, a grand jury indicted Hickman and Howell on two counts of aiding and abetting deprivation of rights under color of law, in violation of 18 §§ U.S.C. 242 and 2, and one count of obstruction of justice, in violation of 18 U.S.C. § 1519.

### Hickman's Sentence

Hickman pleaded guilty to each count in the indictment. At sentencing, the district court adopted the recommendations in Hickman's presentence investigation report ("PSR"). Hickman's PSR revealed that, for sentencing purposes, Hickman's offenses would be "grouped together" under count one of the indictment. Hickman's PSR revealed a base offense level of 14 for count

4

one. *See* U.S.S.G. § 2H1.1; § 2A2.2. He received a four-level increase for use of a dangerous weapon, *see* § 2A2.2(b)(2)(B), and a seven-level increase because the victim sustained life-threatening injuries, *see* 2A2.2(b)(3)(C). However, because the "cumulative adjustments from application of subdivisions (2) and (3) shall not exceed 10 levels," *see* § 2A2.2(b)(3)(E), the district court adjusted Hickman's offense level to 10, bringing his total base offense level to 24. From there, he received a six-level increase because the offense was committed under color of law, *see* § 2H1.1(b)(1); a two-level increase because the victim was restrained in the course of conduct, *see* § 3A1.3; a two-level increase for obstruction of justice, *see* § 3C1.1; and a three-level reduction for acceptance of responsibility, for an adjusted offense level of 31.

Hickman objected to each enhancement, but the district court overruled his objections. The district court adopted the PSR's advisory sentencing guideline range of 108 to 135 months' imprisonment. The government moved for a four-level upward variance based on the seriousness of Hickman's offense, and also for a 35% downward departure from the varied range based on Hickman's cooperation in the case.[2] As to the government's request for an upward variance, the district court stated that although it would "ordinarily . . . vary upward" it was "not going to do that" because Hickman "accepted responsibility for his actions and has cooperated with the government." The court then addressed the government's request for a downward departure, which it also denied. In doing so, the court noted Hickman's cooperation, but ultimately determined that, because of the "severity of the crime," it was "not persuaded that [Hickman] should be able to cooperate his way out of the hole that he has dug in this case." The court sentenced Hickman to 126 months' imprisonment.

---

[2]Hickman was also indicted on related charges stemming from an assault on two other inmates. As part of Hickman's plea agreement, the government agreed to dismiss the unrelated indictment, but noted it would seek an upward variance based on the unrelated conduct.

### *Howell's Conviction and Sentence*

Howell proceeded to trial on two counts of deprivation of constitutional rights under color of law, in violation of 18 U.S.C. §§ 242 and 2: one for deliberate indifference to Trent's medical needs, and the other for depriving Trent of his constitutional right to be free from excessive force. Before closing arguments, the district court held a jury instruction conference. As relevant here, Howell objected to two proposed jury instructions: (1) the proposed jury instruction stating that the jury may consider as evidence of consciousness of guilt that he omitted information from the taser and incident report, and (2) a portion of the deliberate indifference instruction stating that "[j]ail officials who actually know of a substantial risk to pretrial detainees' health or safety are not deliberately indifferent if the jail official responds reasonably."

With respect to the first, Howell argued that "an innocent person may omit certain information for some other reason." The district court overruled Howell's objection, finding that "there was evidence that information was omitted" and that Howell was free to argue that the omission was "by mistake or [that it] meant nothing."

With respect to the second, Howell's challenge was successful. He argued that the jury instruction improperly lowered the state of mind to a "negligence" standard for deliberate indifference, where a heightened standard was required. The district court sustained Howell's objection and modified that portion of the instruction as follows:

> Deliberate indifference requires that the defendant knew of and disregarded a substantial risk of serious of serious harm to [the detainee's] health and safety, even if the harm ultimately was not averted.

Other than requesting the court to add that "[m]ere negligence is insufficient to prove . . . that definition," Howell had "[no] more objections" to the instruction. The jury convicted Howell on both counts, and the district court sentenced him to 120 months' imprisonment.

## II. ANALYSIS

### a. Hickman's Sentencing Challenge

On appeal, Hickman argues that the district court erred by granting the government's motion for a downward departure but then failing to apply an actual reduction to his sentence. He also challenges the district court's application of five sentencing enhancements: (1) a four-level enhancement for use of a dangerous weapon under § 2A2.2(b)(2)(B); (2) a seven-level enhancement for inflicting permanent or life-threatening injuries under § 2A2.2(b)(3)(C); (3) a two-level enhancement for finding that the victim was restrained under § 3A1.3; (4) a two-level enhancement for obstruction of justice under § 3C1.1 ; and (5) a six-level enhancement for acting under color of law under 2H1.1(b)(1). We disagree with Hickman as to each challenge.

We review the procedural reasonableness of a district court's sentence for abuse of discretion. *Gall v. United States,* 552 U.S. 38, 51 (2007). "In reviewing for procedural reasonableness, a district court abuses its discretion if it commits a significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range" or by "selecting a sentence based on clearly erroneous facts . . . ." *United States v. Callahan*, 801 F.3d 606, 626 (6th Cir. 2015) (quoting *United States v. Johnson*, 640 F.3d 195, 201–02 (6th Cir. 2011)) (internal quotation marks omitted). We accord a "rebuttable presumption of reasonableness" to a sentence that is within the advisory Guidelines range. *Id.* at 627 (quoting *United States v. Kirchhof*, 505 F.3d 409, 413 (6th Cir. 2007)). We review the district court's interpretation of the Guidelines de novo, and its application of the Guidelines for clear error. *United States v. Duke*, 870 F.3d 397, 401 (6th Cir. 2017).

*Downward departure.* We begin with Hickman's argument that the district court erred by granting the government's request for a downward departure but failing to reduce his sentence.

Hickman's argument fails for one main reason: the district court denied the government's request for a downward departure. In response to the government's request for departure, the district court stated it "was not persuaded that [Hickman] should be able to cooperate his way out of the hole he has dug in this case" and denied the government's request. Because our review of a district court's denial of a downward departure is limited to instances where the district court mistakenly believed it lacked the discretion to grant a departure, a challenge Hickman does not raise, we lack jurisdiction to consider this challenge. *See United States v. Mapp*, 311 F. App'x 738, 740 (6th Cir. 2008) ("[W]e shall not review decisions of a district court not to depart downward unless the record reflects that the district court was not aware of or did not understand its discretion to make such a departure." (internal quotation mark omitted)).

*Dangerous Weapon Enhancement.* Next, Hickman challenges the district court's application of a four-level enhancement under § 2A2.2(b)(2)(B), finding that Hickman's boot was a dangerous weapon. We find no error. The Guidelines define a "dangerous weapon" as "an instrument capable of inflicting death or serious bodily injury." § 1.B1.1, n.1(E). This "includes any instrument that is not ordinarily used as a weapon (e.g., a car, a chair, or an ice pick) if such an instrument is involved in the offense with the intent to commit bodily injury." § 2A2.2, n.1. Employing a "'functional approach' to 'what constitutes a dangerous weapon' under the Guidelines," we recognize that, "in the proper circumstances, almost anything can count as a dangerous weapon," including—as relevant here—"tennis shoes" and "rubber boots." *Callahan*, 801 F.3d at 628 (quoting *United States v. Tolbert*, 668 F.3d 798, 802–03 (6th Cir. 2012)).

"The ultimate inquiry is whether a reasonable individual would believe that the object is a dangerous weapon [*i.e.*, capable of inflicting serious bodily injury] under the circumstances." *Tolbert*, 668 F.3d at 801 (quoting *United States v. Rodriguez*, 301 F.3d 666, 668 (6th Cir. 2002)).

For instance, in *Duke*, we held that a table was a dangerous weapon where the defendant struck the victim's head upon it. 870 F.3d at 404. We explained that the "manner [in which the table] was used," along with the "bruising" and "abrasion" suffered by the victim, "illustrat[ed] that [the defendant] used the table in a dangerous manner." *Id.* at 402. The same is true here. Hickman weighed nearly 400 pounds and wore a size 15 boot; he admittedly kicked Trent in the torso with enough force that his boot-print remained embedded in Trent's body hours later. A reasonable individual would undoubtedly believe that Hickman's large shoe size, when combined with Trent's vulnerable position of lying on the floor, was "capable of inflicting serious bodily injury." *Tolbert*, 668 F.3d at 801. Even more, the bruising and boot print on Trent's body indicates that Hickman "used [his boot] in a dangerous manner." *Duke*, 870 F.3d at 402. Thus, the district court did not err in finding that Hickman's boot was a dangerous weapon.

In arguing that the dangerous weapon enhancement should not apply, Hickman contends that "the boot was incidental" and just "happened to be on his foot when [he delivered] the kick [to Trent]." Hickman's Br. at 12. Hickman contends that because it was only "one kick" and the boot is not "steel toed" or "worn with intent to do damage," it cannot be considered a dangerous weapon. Hickman Br. at 12. He is mistaken. Whether his boot was steel toed, or whether he wore it with the intent to use it as a dangerous weapon is of no moment to our analysis. Rather, because a reasonable person would have known that Hickman's boot "was capable of causing serious bodily injury," and he used it "in a dangerous manner," his boot was a dangerous weapon for purposes of the four-level enhancement under § 2A2.2(b)(2)(B).[3]

---

[3]Hickman relies on the Fifth Circuit's decision in *United States v. Nunez-Granados*, 546 F. App'x 483 (5th Cir. 2013), where the court held the defendant's shoe was not a dangerous weapon. Unlike here, the defendant in *Nunez-Granados* kicked the officer as he "attempt[ed] to free himself from [the officer's] grasp." This case is easily distinguishable as Hickman used his boot, not to "free himself," but to inflict harm upon Trent.

*Permanent or Life-Threatening Injury Enhancement.* Hickman contends that the district court erred in applying the seven-level enhancement under § 2A2.2(b)(3)(C). Pursuant to § 2A2.2(b)(3)(C), a seven-level enhancement is required "[i]f the victim sustained [permanent or life-threatening] bodily injury." A life-threatening injury includes an "injury involving a substantial risk of death." § 1B1.1. n.1(K). As relevant conduct, a court may consider "all acts and omissions committed, aided, abetted, counseled . . ., or willfully caused by the defendant," including "all harm that resulted from these acts." *United States v. Settle*, 414 F.3d 629, 632 (6th Cir. 2005) (quoting § 1B1.3(a)(1)).

Hickman argues that "there is no proof at all that [he] was the individual who inflicted [the] injuries [upon Trent]" because Trent died from a pelvic fracture on his left side, but Hickman kicked Trent in his upper right side. Thus, he contends the district court improperly enhanced his sentence for causing life-threatening injuries. Hickman Br. at 13. This argument fails for two reasons. First, the record contradicts Hickman's assertion that his individual conduct did not contribute to Trent's death. Hickman admitted in his plea agreement that he or Howell "kicked [Trent] in the pelvic area"—the primary cause of Trent's death. Moreover, blunt force trauma to Trent's head, trunk and extremities also contributed to his death. Hickman admits to "kick[ing] [Trent] without justification in the torso," to "drive tas[ing]" Trent while he was subdued, and to "continu[ing] to assault" Trent as he lay on the floor. This alone supports the district court's finding that Hickman's direct actions resulted in Trent's life-threatening injuries. Second, even if Hickman did not directly cause Trent's life-threatening injuries, Hickman aided and abetted Howell's assault on Trent. Relevant conduct for a sentencing enhancement includes "all acts . . . aided [and] abetted." § 1B1.3(a)(1). Hickman likewise acknowledges in his plea agreement that

he aided and abetted Howell as Howell punched Trent in the face, stomped on his arm, and kicked him in the face. Thus, we find no error by the district court.

*Physically Restrained Enhancement.* Hickman also argues that § 3A1.3, which provides for a two-level enhancement "[i]f [the] victim was physically restrained in the course of the offense," is inapplicable because Trent was "still reaching up with his arms, and kicking with his legs," and therefore was not restrained. Hickman Br. at 14. We disagree. The Guidelines define "physically restrained" as "the forcible restraint of the victim such as by being tied, bound, or locked up." U.S.S.G. § 1B1.1 n.1(L). In *United States v. Coleman*, we explained that "force" is to "compel[] [one's actions] by physical means or by legal requirement." 664 F.3d 1047, 1049 (6th Cir. 2012) (quoting *Black's Law Dictionary* 718 (9th ed. 2009)).

Hickman again focuses on the single kick to Trent in arguing that Trent was not restrained because he was "reaching" and "kicking." But as discussed, the district court may consider Hickman's individual acts as well as those of Howell that Hickman aided and abetted. Hickman concedes in his plea agreement that "[a]s [Trent] was being restrained and was under control, Howell punched [Trent] in the head and stomped on [Trent's] arm," while Hickman tased Trent. Hickman also testified that "after Trent was [no longer] a threat and was being physically restrained," Howell "hit [Trent] a few times in the face." Accordingly, the record supports the district court's finding that Trent was physically restrained for purposes of the sentencing enhancement under § 3A1.3.[4]

---

[4]Hickman relies on a Fifth Circuit case, *United States v. Clayton*, 172 F.3d 347 (5th Cir. 1999), in arguing that the restraint enhancement should not apply in excessive-force cases. In doing so, Hickman relies on a single sentence from *Clayton*: "the lawfulness of the defendant's restraint of the victim at the time the unreasonable or excessive force occurs is not a concern implicated by U.S.S.G. § 3A1.3." However, Hickman reads this sentence out of context. In *Clayton*, the victim was lawfully handcuffed at the time of the assault. *Id.* at 353. The Fifth Circuit held that the

*Double Counting*.   Finally, Hickman asserts that the district court improperly double counted two sentencing enhancements.  By penalizing him twice for the same conduct, he argues, the district court violated his right to be free from double jeopardy.  Hickman's double jeopardy claim fails as a matter of law.  It is well-established that "double jeopardy principles generally have no application in the sentencing context 'because the determinations at issue do not place a defendant in jeopardy for an offense.'"  *United States v. Wheeler*, 330 F.3d 407, 413 (6th Cir. 2003) (quoting *Monge v. California*, 524 U.S. 721, 728 (1998)).  We have previously explained that "[t]his rule also applies to sentencing enhancements, which constitute increased penalties for the latest crime, rather than 'a new jeopardy or additional penalty for the earlier crimes.'"  *Id.* (quoting *Monge*, 524 U.S. at 728).  Given that Hickman's challenge is to the district court's application of sentencing enhancements, his double jeopardy claim fails.

Although framed as a double jeopardy violation, Hickman's arguments more accurately raise issues of impermissible double counting by the district court.  "Impermissible 'double counting' occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways."  *Duke*, 870 F.3d at 404 (quoting *United States v. Farrow*, 198 F.3d 179, 193 (6th Cir. 1999) (superseded on other grounds)).  However, "not all instances of double counting are impermissible."  *Wheeler*, 330 F.3d at 413.  "[A] court may impose two enhancements arising from the same conduct, provided the enhancements 'penalize distinct aspects of [a defendant's] conduct and distinct harms.'"  *United States v. Sweet*, 776 F.3d 447, 451 (6th Cir. 2015) (quoting *United States v. Smith*, 516 F.3d 473, 476 (6th Cir. 2008)).

---

enhancement for restraint was appropriate despite the victim being *lawfully* restrained, explaining that "the *lawfulness* of the defendant's restraint of the victim at the time the unreasonable or excessive force occurs is not a concern implicated by U.S.S.G. § 3A1.3."  *Id.*  In other words, the enhancement is appropriate whether or not the officer's restraint was lawful.  This does not help Hickman.

This argument fares no better for Hickman. As discussed, Hickman pleaded guilty to two counts of aiding and abetting deprivation of civil rights under color of law, in violation of 18 U.S.C. §§ 242 and 2, and one count of obstruction of justice, in violation of 18 U.S.C. § 1519. Hickman points to two instances of alleged double counting: (1) the district court's application of a two-level enhancement under § 3C1.1 for obstruction of justice, and (2) the district court's application of the six-level enhancement under § 2H1.1(b)(1)(B) for acting under color of law. As to the first, Hickman contends that, because he was convicted of obstruction of justice, in violation of 18 U.S.C. § 1519, the district court erred by also applying the two-level enhancement for obstruction of justice under § 3C1.1 based on the same conduct for which he was convicted. We disagree with Hickman. Section 3C1.1 provides for a two-level enhancement "[i]f . . . the defendant willfully obstructed or impeded . . . the . . . investigation," and "the obstructive conduct related to . . . the defendant's [underlying] offense or conviction." As relevant here, the accompanying comments for § 3C1.1 explain that "if the defendant is convicted of [an obstruction offense]," the enhancement "is not to be applied to the offense level for *that* offense" unless "significant further obstruction occurred." § 3C1.1 cmt. n.7 (emphasis added).

Hickman reads this to mean the two-level enhancement cannot apply if he is convicted of the underlying offense and the obstruction offense. He has misread the Guidelines. The commentary instructs that the enhancement "is not to apply to the [*obstruction*] offense level." § 3C1.1 n.7. But we have explained that when an obstruction offense is grouped together with other counts for purposes of determining the defendant's base offense level, "the obstruction of justice enhancement applies to the grouped counts . . . ." *United States v. Pego*, 567 F. App'x 323, 330 (6th Cir. 2018) (citing § 3C1.1 n.8).

13

This is precisely what the district court did here. As reflected in Hickman's PSR—which the district court adopted—the court grouped Hickman's obstruction of justice offense with his underlying offense for violation of 18 U.S.C. § 242. This established a base offense level of 14 for Hickman's violation of § 242 alone. The district court then applied the two-level enhancement for obstruction of justice. Thus, the district court's application of the two-level enhancement does not constitute impermissible double counting because Hickman's "specific conduct for [falsifying records] did not factor into [his] sentence in two separate ways." *See United States v. Moon*, 513 F.3d 527, 543 (6th Cir. 2008) (upholding the district court's application of the obstruction of justice enhancement under § 3C1.1 where the district court grouped the defendant's obstruction count with the underlying offense).

Similarly unavailing is Hickman's challenge to the district court's application of a six-level enhancement under § 2H1.1(b)(1)(B) for acting under color of law. Section 2H1.1(b)(1) provides for a six-level enhancement if "the defendant was a public official at the time of the offense" or "the offense was committed under color of law." Hickman contends that the district court's application of this enhancement was impermissible double counting because acting under color of law is already factored into his underlying offense under 18 U.S.C. § 242. Thus, Hickman argues he was punished twice for acting under color of law. We disagree.

In *United States v. Smith*, 196 F.3d 676, (6th Cir. 1999), we considered a similar challenge to the district court's application of a sentencing enhancement where the conduct warranting the enhancement also constituted an element of the defendant's underlying offense. In *Smith*, we found the Fifth Circuit's reasoning in *United States v. Kings*, 981 F.2d 790, 793 (5th Cir. 1993), persuasive that a district court does not engage in double counting by applying an enhancement

when the Guideline establishing the base offense level—as opposed to the statute establishing criminal liability—does not take the conduct into account. *Id.* at 683–84.

In *Kings*, the defendant was convicted of assaulting a federal officer in violation of 18 U.S.C. § 111. *Id.* at 793. Like here, the Guideline for the defendant's offense contained a cross-reference to § 2A2.2 for aggravated assault as the base offense level. *Id.* Although an element of 18 U.S.C. § 111 included the victim being a government official, the district court still applied a three-level enhancement pursuant to § 3A1.2 because the victim was an officer. *Id.* at 792–93. Rejecting the defendant's challenge to the enhancement as impermissible double counting, the Fifth Circuit explained that, because the defendant's "conduct constituted aggravated assault" by cross-reference to § 2A2.2, and "the base offense level for [aggravated assault] does *not* reflect the fact that the victim was a government official," the district court did not err by "increas[ing] the assault group offense level for an official victim." *Id.* at 793 (emphasis in original). *See also United States v. Webb*, 252 F.3d 1006, 1010 (8th Cir. 2001) (upholding a six-level enhancement under § 2H1.1(b)(1) for acting under color of law although the defendant was convicted under § 242); *United States v. Volpe*, 224 F.3d 72, 76 (2d Cir. 2000) (same).

The same is true here. Indeed, acting under color of law is an element of Hickman's underlying offense. However, as *Kings* instructs, the relative inquiry is not whether the elements of Hickman's *offense* include the same conduct as the enhancement, but whether "the base offense level" for which the defendant is sentenced includes the same conduct as the enhancement. *Kings*, 981 F.2d at 793. Hickman's base offense level does not include acting under color of law. Recall that to determine Hickman's base offense level of 14, the district court cross-referenced U.S.S.G. § 2A2.2 (aggravated assault). Like *Kings*, "the base offense level for [aggravated assault] does *not* reflect the fact that [Hickman acted under color of law]." *Kings*, 981 F.2d at 793. We have

previously explained that "the harm to be punished, and deterred, by the 'under color of law' enhancement is the misuse of power by one with governmental authority." *United States v. McCoy*, 480 F. App'x 366, 373 (6th Cir. 2012). Hickman's base offense level does not—by itself—"penalize [the] distinct aspects of [Hickman's] conduct and distinct harms" that § 2H1.1(b)(1)(B) set out to punish. *Sweet*, 776 F.3d at 451. Thus, because acting under color of law factored into Hickman's sentence only through the six-level enhancement under § 2H1.1(b)(1), the district court did not err.

### b. Howell's Challenge

Howell raises two challenges on appeal: (1) that the district court improperly instructed the jury on the subjective element of deliberate indifference; and (2) that the district court improperly instructed the jury that it may consider his falsification of two reports as evidence of consciousness of guilt. We address each in turn.

"We review challenges to a district court's jury instruction for abuse of discretion." *United States v. Geisen*, 612 F.3d 471, 485 (6th Cir. 2010). The district court does "not abuse its discretion unless the jury charge 'fails accurately to reflect the law.'" *United States v. Ross*, 502 F.3d 521, 527 (6th Cir. 2007) (quoting *United States v. Layne*, 192 F.3d 556, 574 (6th Cir. 1999)). Considering the jury instruction "as a whole," reversal is proper "only if the instructions . . . were confusing, misleading, or prejudicial." *Ross*, 502 F.3d at 527 (quoting *United States v. Harrod*, 168 F.3d 887, 892 (6th Cir. 1999)). Objections not properly preserved, however, are reviewed for plain error. *United States v. Castano*, 543 F.3d 826, 833 (6th Cir. 2008). "In the context of challenges to jury instructions, '[p]lain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice.'" *Id.* (quoting *United States v. Newsom*, 452 F.3d 593, 605 (6th Cir. 2006)).

*Deliberate Indifference Jury Instruction.* Howell first challenges the district court's jury instruction on the subjective element of deliberate indifference. Howell objected to part of the district court's proposed instruction that related to the subjective component of deliberate indifference, arguing that it implied a negligence standard when a higher standard was warranted. The district court agreed with Howell, sustained the objection, and modified the instruction. Based on that modification, Howell indicated he had no further objection to the deliberate indifference instruction. Because Howell made no objection to the modified instruction, his claim is not properly preserved, and we review his challenge for plain error.[5] *Castano*, 543 F.3d at 833.

Deliberate indifference has both an objective and subjective component. *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (citation omitted). The subjective component requires showing that the defendant had actual knowledge that a "substantial risk" of serious harm existed, whereas the objective inquiry requires a showing that an inmate had a "serious medical need." *Id.* at 737–38. With respect to the objective component, the district court instructed the jury that it was required to determine whether:

> (A) Larry Trent's medical need was serious, meaning it posed a substantial risk of serious harm to his health. A serious medical need is a one for which treatment has been recommended or that is so obvious that even a person without medical training would easily recognize that medical care is needed. A defendant's state of mind about the seriousness of the injury is not to be considered. Rather you must ask yourself whether a reasonable person in the same situation as the defendant would have viewed Larry Trent's injuries as being a serious medical need[.]

---

[5] Howell contends that he objected to the entire deliberate indifference instruction, and thus it was properly preserved. We disagree. Howell's objection related entirely to the portion of the jury instruction that referenced a negligence standard. Moreover, after the district court modified the jury instruction Howell indicated he had no further objections. Therefore, this argument fails. *See United States v. Semrau*, 693 F.3d 510, 526–527 (6th Cir. 2012) ("[A] party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate." (quoting Fed. R. Crim. P. 30(d))).

The court then instructed the jury as to the subjective prong, stating:

 (B) If you find that Larry Trent had a serious medical need, the government must then prove that that the defendant was deliberately indifferent to that need.  This is found only if the government proves:

a. that the defendant was aware of or perceived facts from which to infer that a substantial risk of serious harm to Larry Trent existed;

b. that the defendant drew the inference that a substantial risk of serious harm existed, meaning the defendant was actually aware of or knew that Larry Trent had a serious medical need; and;

c. that the defendant chose to disregard that substantial risk to Larry Trent.

Mere negligence is insufficient to prove deliberate indifference.  Deliberate indifference requires that the defendant knew of and disregarded a substantial risk to Larry Trent's health and safety, even if the harm ultimately was not averted.

Howell contends that the district court "injected contradiction and confusion into the instructions" by stating that Howell's state of mind about the seriousness of the injury should not be considered, and moments later instructing the jury to consider Howell's mental state as to the subjective prong.  Howell Br. at 16.  He argues that, because the district court did not "properly explain the two-part test or give any other context," the instruction was "confusing, misleading and prejudicial."  Howell's Br. at 16.  We disagree.  The district court first explained the objective element, instructing the jury that Howell's "state of mind about the seriousness of the injury is not to be considered."  The district court then proceeded to instruct the jury as to the subjective element, explaining that it must find that Howell was "actually aware of" or "knew" that a substantial risk of serious harm to Trent's health existed, but that he "chose to disregard" it.  The instructions, viewed as a whole, correctly state the law concerning deliberate indifference.  We find no error, much less plain error.

*Concealment of Evidence Jury Instruction.*  We likewise reject Howell's argument that the district court erred by instructing the jury that it could consider Howell's omission from the

incident and taser reports as evidence of Howell's guilty conscience. Howell argues that (1) the district court erred in giving this instruction because the evidence failed to support the four inferences required before a court may issue a "flight" instruction; and (2) the instruction was not warranted because there was insufficient evidence in the record to establish that he intentionally omitted information from the reports. We disagree.

Sixth Circuit Pattern Jury Instruction 7.14 permits a court to instruct a jury that it may consider evidence of "[f]light, [c]oncealment of [e]vidence, [or] [f]alse [e]xculpatory [s]tatements" as circumstantial evidence that the defendant "thought he was guilty and was trying to avoid punishment." The jury may, "[o]n the other hand," conclude that the defendant's conduct was the result of "some other [innocent] reason." Pattern Jury Instruction 7.14. Over Howell's objection, the district court instructed the jury that "if [it] believed that [Howell] omitted information from written reports," it could consider the omission as evidence that "he thought he was guilty and was trying to avoid punishment" or that the information was omitted "for some other [innocent] reason." Howell contends the district court was first required to determine the probative value of the evidence by employing a four-part test establishing an inference:

> (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

*United States v. Dillon*, 870 F.2d 1125, 1127 (6th Cir. 1989) (citing *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977)). However, our application of this four-part test has been limited to cases involving *actual flight*. *See United States v. Dye*, 538 F. App'x 654, 664–65 (6th Cir. 2013) (applying the four-part test where the defendant borrowed his girlfriend's car to leave town shortly after learning authorities were looking for him); *Dillon*, 870 F.2d at 1126-27 (applying the four-part test where the defendant fled after learning that his co-conspirator planned

to testify before the grand jury). That each of the four inferences explicitly reference "flight" further illustrates that its application is limited to cases involving actual flight.

The district court did not give a *flight* instruction in this case. Rather, the court instructed the jury on *concealment of evidence*, likewise provided by the Sixth Circuit Pattern Jury Instruction 7.14. Contrary to Howell's assertion, we have not applied an inference test in cases where a defendant suppresses or conceals evidence.[6] Because the district court did not give a flight instruction, it was not required to consider the four-part test.[7]

Howell argues next that there was insufficient evidence that he omitted information from the incident reports. This argument is equally unavailing. In a per curiam decision in *United States v. Singleton*, we upheld the district court's concealment-of-evidence instruction as to the defendant's fabrication of evidence, explaining that—with adequate evidence in the record—such instruction is proper where the court "sufficiently caution[s] the jury" to consider the suppression of evidence, "together with other evidence" as to a defendant's "guilt or innocence." 904 F.2d 37, 8-9 (6th Cir. 1990) (per curiam) (citing *United States v. Scheibel*, 870 F.2d 818, 822 (2d Cir. 1989)).

The evidence amply supports the district court's instruction. Howell testified that he was required to complete an incident report anytime force was used, including "why [the force] was used" and "any injuries that an inmate sustain[ed]." Howell also knew that the purpose of the

---

[6]Howell relies primarily on two out-of-circuit cases, *United States v. Beahm*, 664 F.2d 414 (4th Cir. 1981), and *United States v. Silverman*, 861 F.2d 571 (9th Cir. 1988), in arguing that the four-inference test should apply in this context. Aside from them being non-binding, they are also easily distinguishable. Unlike here, they both involved allegations of actual flight.

[7]At any rate, even if the four-part test had applied in this case, Howell's conduct—which included making materially false statements about the incident within hours of the assault—would have been sufficient to support each of those inferences.

reports was to "investigat[e]" incidents involving force. Yet, Howell omitted crucial information from the incident and taser reports, including that he and Hickman repeatedly kicked, punched and tasered Trent, and that Trent was visibly injured.[8] Thus, there was sufficient evidence for the jury to infer that Howell omitted this information from the reports because "he thought he was guilty and was trying to avoid punishment." Sixth Circuit Pattern Jury Instruction 7.14. Moreover, the district court also instructed the jury that it could consider that the information was omitted "for some [innocent] reason." We find no error.

Undeterred, Howell argues consciousness of guilt cannot be inferred because he completed the reports before learning of Trent's condition and before he was "aware of the specific charges against him." But even if Howell were not aware of the full extent of Trent's injuries or of any charges against him, Howell was aware of the amount of force used, that Trent was injured, and that information in the reports might be provided to the Department of Corrections to investigate. The evidence adequately supports the jury instruction.

### III. CONCLUSION

For these reasons, we affirm.

---

[8]Though Howell testified that he simply "forgot" to report the information, the jury was free to consider this testimony as evidence of "some [innocent] reason" for his omission. But the jury rejected his testimony.