RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0200p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 16-2128

RONNIE EDWARD DUKE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:14-cr-20136-1—Stephen J. Murphy III, District Judge.

Decided and Filed:  August 29, 2017

Before:  MOORE, STRANCH, and DONALD, Circuit Judges.

_____

### COUNSEL

_____

**ON BRIEF:**  Craig A. Daly, CRAIG A. DALY, P.C., Detroit, Michigan, for Appellant.
Matthew B. Kall, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

### OPINION

_____

KAREN NELSON MOORE, Circuit Judge.  Defendant-Appellant Ronnie Edward Duke
was sentenced to a 97-month term of imprisonment for assaulting an Assistant United States
Attorney at a hearing in a separate case.  During the incident, Duke struck the attorney's head
against and pushed the attorney's legs into a table in the courtroom, causing bruising and an
abrasion.  At sentencing, the district court determined that the table was a "dangerous weapon"
under the United States Sentencing Commission Guidelines Manual ("the Guidelines"), which

triggered sentencing enhancements that Duke challenges on appeal. Duke also argues that some of these enhancements constitute impermissible double counting for the same conduct. Because Duke used the courtroom table under the circumstances as a dangerous weapon and because no impermissible double counting occurred, we **AFFIRM** the sentence below.

## I. BACKGROUND

The district court made factual findings based on the parties' memoranda and the presentence investigation report ("PSR"), R. 35 (Sentencing Tr. at 38) (Page ID #262), so our recitation of the facts is likewise focused on these sources.

### A. Facts

The events that gave rise to this case began after Duke was sentenced to a 156-month term of imprisonment for conspiracy to commit wire fraud. No. 2:11-cr-20017-JAC-VMM R. 180 (Judgment at 2) (Page ID #899).[1] However, following his sentence, Duke failed to self-surrender. PSR ¶ 6. A warrant was issued for his arrest, a new indictment was filed, charging Duke with failure to surrender for a sentence, and Duke was arrested on February 24, 2014. *Id.* ¶¶ 6–8. At the arraignment, defense counsel requested that Duke be transferred to the prison to which he had originally been designated to report or to a prison in Milan, Michigan. *Id.* ¶ 8. Counsel for the government opposed Duke's request, instead requesting that Duke be transferred to a more local facility because the new charges were brought in the Eastern District of Michigan. *Id.*

At this point, the hearing turned. Duke "yelled 'you f**cking b**ch' and ran towards the government attorney." *Id.* He "grabbed the victim by the back of the victim's head[,] struck the victim with his fist several times[, and] smashed the victim's head into a table repeatedly. The victim's legs were pushed into the table during the attack, causing bruising." *Id.* Duke also acknowledges that there was "a small abrasion on the AUSA's right temple." Appellant's Br. at 3. The attack ended when "various people within the courtroom" "subdued" Duke. PSR ¶ 8.

---

[1]Unless otherwise indicated, as here, record citations are to case number 2:14-cr-20136-SJM-MKM, the judgment from which Duke currently appeals.

**B. Charges, Sentencing, and Procedural History**

Duke was ultimately charged with one count of assaulting, resisting, or impeding certain officers or employees in violation of 18 U.S.C. § 111(a)(1), (b). R. 1 (Indictment) (Page ID #1–3). Duke pleaded guilty to this count, which the district court accepted. R. 34 (Plea Hr'g Tr. at 28) (Page ID #201).

Prior to sentencing, a probation officer prepared a PSR, which asserted that Duke's base offense level was 14 pursuant to § 2A2.2(a) of the Guidelines. PSR ¶ 14. The PSR also suggested a 4-level increase pursuant to § 2A2.2(b)(2) because Duke used a dangerous weapon (i.e., the table), PSR ¶ 15; a 3-level increase pursuant to § 2A2.2(b)(3)(A) because the victim sustained bodily injury, PSR ¶ 16; a 2-level increase pursuant to § 2A2.2(b)(7) because Duke was convicted of 18 U.S.C. § 111(b), PSR ¶ 17, and a 6-level increase pursuant to § 3A1.2(b), PSR ¶ 18. With a 3-level reduction for acceptance of responsibility, the PSR calculated a total offense level of 26. PSR ¶ 25.

Among Duke's several objections to the PSR, Duke disagreed that the table upon which he struck the victim's head was a "dangerous weapon" under the Guidelines. A.R. 6-3 (PSR add., at A-2–3); R. 27 (Def.'s Sentencing Mem. at 4–9) (Page ID #100–05). Based on his alternative view of "dangerous weapon," Duke argued that his base offense level should not be calculated under § 2A2.2; that he should not receive a 4-level increase under § 2A2.2(b)(2) ("If . . . a dangerous weapon (including a firearm) was otherwise used, increase by **4** levels"), R. 27 (Def.'s Sentencing Mem. at 4–9) (Page ID #100–05); and that he should not receive a 2-level increase under § 2A2.2(b)(7) ("If the defendant was convicted under 18 U.S.C. § 111(b)," which imposes an enhanced penalty for anyone who "uses a deadly or dangerous weapon . . . or inflicts bodily injury" in violating § 111(a) (to which Duke pleaded guilty), "increase by 2 levels."). Duke also argued that the PSR impermissibly double counted by increasing his offense level at various points for the same conduct. R. 27 (Def.'s Sentencing Mem. at 9–10) (Page ID #105–06).

At sentencing, the district court concluded that the table was a "dangerous weapon," overruling Duke's objections. R. 35 (Sentencing Tr. at 37) (Page ID #261). The court thus

agreed with the PSR that Duke's total offense level was 26. *Id.* Considering Duke's criminal history category of III, the district court determined that Duke's Guidelines imprisonment range was 78 to 97 months. *Id.* at 38 (Page ID #262). The court sentenced Duke to 97 months of imprisonment. R. 31 (Judgment at 2) (Page ID #167). This term of imprisonment and an 18-month term of imprisonment that Duke received for failure to surrender for a sentence run consecutive to a 156-month term of imprisonment that Duke received for conspiracy to commit wire fraud. *Id.* Duke filed a timely notice of appeal with respect to the 97-month sentence. R. 32 (Notice of Appeal) (Page ID #171–72).

## II. DISCUSSION

Duke raises two issues on appeal, both of which focus on the district court's application of the Guidelines. First, Duke argues that the courtroom table was not a "dangerous weapon" as defined by the Guidelines. Second, Duke argues that the district court impermissibly double counted when it increased his Guidelines score. For the following reasons, we hold that Duke is incorrect on both counts.

## A. Standard of Review

Duke challenges the procedural reasonableness of his sentence, an issue that he preserved at sentencing, R. 35 (Sentencing Tr. at 63–64) (Page ID #287–88), and which we therefore review for abuse of discretion, *see United States v. Callahan*, 801 F.3d 606, 626 (6th Cir. 2015). "[A] district court abuses its discretion if it commits a significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range . . . [or] selecting a sentence based on clearly erroneous facts . . . ." *Id.* (quoting *United States v. Johnson*, 640 F.3d 195, 201–02 (6th Cir. 2011)).

A district court's *interpretation* of the Guidelines is a legal question, so we review that interpretation de novo. *United States v. Tolbert*, 668 F.3d 798, 800 (6th Cir. 2012). But with respect to a district court's *application* of the Guidelines, "we review the district court's factual findings for clear error and mixed questions of law and fact de novo." *Id.* "A finding is clearly erroneous where, although there is evidence to support it, the reviewing court on the entire

evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *United States v. Webb*, 616 F.3d 605, 609 (6th Cir. 2010)).

## B. Dangerous Weapon

As referenced above, a defendant's use of a "dangerous weapon" in the commission of an aggravated assault permits a district court to raise the defendant's base offense level. *See* U.S. Sentencing Guidelines § 2A2.2(b)(2). The Guidelines define a "dangerous weapon" as "(i) an instrument capable of inflicting death or serious bodily injury; or (ii) an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument (e.g. a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun)."[2] *Id.* § 1B1.1 cmt. n.1(D). Section 2A2.2 elaborates "for purposes of [that] guideline regarding aggravated assault] that a "'[d]angerous weapon' . . . includes any instrument that is not ordinarily used as a weapon (e.g., a car, a chair, or an ice pick) if such an instrument is involved in the offense with the intent to commit bodily injury."[3] *Id.* § 2A2.2 cmt. n.1. "This Court employs a 'functional approach' to 'what constitutes a dangerous weapon' under the Guidelines, and we have recognized that 'in the proper circumstances, almost anything can count as a dangerous weapon, including walking sticks, leather straps, rakes, tennis shoes, rubber boots, dogs, rings, concrete curbs, clothes irons, and stink bombs.'" *Callahan*, 801 F.3d at 628 (quoting *Tolbert*, 668 F.3d at 802–03).

For instance, in *Tolbert*, we held that a district court correctly applied a functional analysis by "looking at the circumstances in which the [instrument] was used." 668 F.3d at 803. In that case, the defendant struck a Deputy United States Marshal in the head with a water pitcher at a sentencing hearing. *Id.* at 799. Evidence presented at the sentencing hearing indicated "that the water pitcher was made out of a very hard plastic that was intact before the incident" but that "[a]fter the incident, the plastic casing on the water pitcher was cracked." *Id.*

---

[2]"'Serious bodily injury' means injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S. Sentencing Guidelines § 1B1.1 cmt. n.1(L).

[3]"'Bodily injury' means any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S. Sentencing Guidelines § 1B1.1 cmt. n.1(B).

at 800. There was also evidence that the pitcher may have been full at the time it struck the victim, that it "was roughly estimated to have a height of about ten inches, with a handle of six inches, and a circumference of about twelve inches," and that "[i]t was estimated to weigh about half of a pound to a pound when empty." *Id.* The district court concluded that a water pitcher was a dangerous weapon "based on evidence of the characteristics of the water pitcher— including its hardness, size, shape, and weight, the circumstances in which it was used (to strike someone in the head), and common experience, that this object was capable of inflicting serious bodily harm, even though no such harm actually resulted." *Id.* at 803. Noting that the district court had not clearly erred in these factual findings, we held that the water pitcher was a dangerous weapon under the circumstances. *Id.*

We believe that in this case the district court correctly followed the approach articulated in *Tolbert*. First and foremost, the district court considered the table's capability of inflicting death or serious bodily harm: "The edge of the table, the corner of the table, the flat top of the table itself, when used in the manner it was used here, which is a stationary, unmoving object . . . against which the victim's body and head could be thrown in anger for the purpose of injuring, it would be a dangerous weapon under those definitions." R. 35 (Sentencing Tr. at 36) (Page ID #260). The court also relied on the parties' memoranda, *id.* at 38 (Page ID #262), which noted the table's "size and density," R. 30 (Gov't's Sentencing Mem. at 6) (Page ID #147), and the PSR, which stated that "Duke . . . smashed the victim's head into a table repeatedly" and pushed the victim's legs into the table, A.R. 6-1 (PSR ¶ 8). Finally, the court considered that the victim suffered bruising and an abrasion, illustrating that Duke used the table in a dangerous manner. R. 35 (Sentencing Tr. at 36) (Page ID #260). The record does not indicate that the district court clearly erred in making these factual findings. Because these findings support the district court's conclusion that the table was capable of inflicting death or serious bodily harm, we hold that the table was a "dangerous weapon" pursuant to § 2A2.2.

Duke argues in response that the Guidelines distinguish between "instruments" and "objects," and that the table was not "an *instrument* capable of inflicting death or serious bodily injury," U.S. Sentencing Guidelines § 1B1.1 cmt. n.1(D) (emphasis added). The Guidelines indeed use the terms "instrument" and "object" at different points: "'Dangerous weapon' means

. . . an *object* that is not an *instrument* capable of inflicting death or serious bodily injury but (I) closely resembles such an *instrument*; or (II) the defendant used the *object* in a manner that created the impression that the *object* was such an *instrument* (<u>e.g.</u> a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun)." *Id.* (emphasis added). However, the Guidelines do not define either term. Therefore, we must give each term "its ordinary and natural meaning." *See United States v. Lumbard*, 706 F.3d 716, 723 (6th Cir. 2013) (quoting *Carter v. Welles-Bowen Realty, Inc.* (*In re Carter*), 553 F.3d 979, 986 (6th Cir. 2009)); *see also United States v. Jackson*, 635 F.3d 205, 209 (6th Cir. 2011) ("In interpreting the Sentencing Guidelines, the traditional canons of statutory interpretation apply."). An object is "a material thing that can be seen and touched." *Object*, Oxford English Dictionary (3d ed. 2004), http://www.oed.com/ (last visited July 11, 2017); *Object*, Merriam-Webster Unabridged, http://unabridged.merriam-webster.com/ (last visited July 11, 2017) ("something that is put or may be regarded as put in the way of some of the senses: a discrete visible or tangible thing"); *cf. Yates v. United States*, 574 U.S. ——, 135 S. Ct. 1074, 1081 (2015) (Ginsburg, J.) ("The ordinary meaning of an 'object' that is 'tangible,' as stated in dictionary definitions, is 'a discrete . . . thing' . . . that 'possess[es] physical form.'" (quoting Webster's Third New International Dictionary 1555 (2002); Black's Law Dictionary 1683 (10th ed. 2014)). An instrument is "[a]n object, device, or apparatus designed or used for a particular purpose or task." *Instrument*, Oxford English Dictionary (3d ed. 2004), http://www.oed.com/ (last visited July 11, 2017); *Instrument*, Merriam-Webster Unabridged (An instrument is a "utensil," which in turn is defined as "an article (as a tool, implement, or vessel) serving a useful purpose." An article is "a material thing: item, object.").

Whatever distinction may exist between "instruments" and "objects," we hold that a table meets the definition of both words. A table is "a material thing that can be seen and touched," *Object*, Oxford English Dictionary (3d ed. 2004), http://www.oed.com/ (last visited July 11, 2017), so it is undoubtedly an object. And in this case, the table was "[a]n object . . . used for a particular purpose or task," *Instrument*, Oxford English Dictionary (3d ed. 2004), http://www.oed.com/ (last visited July 11, 2017), namely, striking the victim's head. Therefore, it is also an instrument.

Duke suggests that an instrument cannot be stationary. However, this argument is contradicted by the ordinary definition of instrument, which says nothing about the object's mobility, and by prior published opinions, which have recognized that stationary objects may be dangerous weapons under certain circumstances, *see Callahan*, 801 F.3d at 628 (citing *Tolbert*, 668 F.3d at 802–03) (noting that a concrete curb could be a dangerous weapon). Such a holding is consistent with at least one sister circuit, which has held that an instrument's stationary nature does not disqualify it from being a dangerous weapon under 18 U.S.C. § 111. *See United States v. Murphy*, 35 F.3d 143, 147–48 (4th Cir. 1994) ("In concluding that the steel bars are a dangerous weapon, we see no distinction that in this case the bars were stationary while [the victim's] head was thrust against them."). Our holding is also consistent with another sister circuit, which has held that a desk overturned onto its victim could be considered a dangerous weapon under § 111.[4] *See United States v. Gholston*, 932 F.2d 904, 905 (11th Cir. 1991). We have previously observed that "almost any object can be a dangerous weapon depending on how it is wielded in the circumstances." *Tolbert*, 668 F.3d at 803 (citing *United States v. Matthews*, 106 F.3d 1092, 1095 (2d Cir. 1997)). In keeping with this observation, we hold that the table upon which Duke struck the victim's head does not cease to be a dangerous weapon simply because it was stationary.

## C. Impermissible Double Counting

Finally, Duke argues that the district court impermissibly double counted in applying multiple Guidelines provisions for the same conduct. It is well established that "impermissible 'double counting' occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways." *United States v. Farrow*, 198 F.3d 179, 193 (6th Cir. 1999). Nevertheless, we allow double counting "where it appears that Congress or the Sentencing Commission intended to attach multiple penalties to the same conduct." *United States v.*

---

[4]Duke argues that "referencing cases that address the elements of [§ 111] and sufficiency of evidence at trial does not satisfy or answer the issue here." Appellant's Br. at 15. We recognize that *Murphy* and *Gholston* tested the sufficiency of the evidence to sustain a conviction under § 111, and not the meaning of "dangerous weapon" under the Guidelines. However, we have previously found such cases useful in interpreting the Guidelines definition. *See Tolbert*, 668 F.3d at 803 (citing *United States v. Matthews*, 106 F.3d 1092, 1095 (2d Cir. 1997) (interpreting "dangerous weapon" under § 111)). And the definition of "dangerous weapon" under § 111 is directly relevant to whether the district court erroneously increased his offense level under § 2A2.2(b)(7) ("If the defendant was convicted under 18 U.S.C. § 111(b) . . . , increase by **2** levels.").

*Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010) (quoting *Farrow*, 198 F.3d at 194). Our inquiry is thus divided in two: we first determine whether double counting occurred, after which we determine whether any such double counting was impermissible. *Id.* If the double counting is impermissible, the sentence is rendered procedurally unreasonable. *Id.*

On appeal, Duke points to three instances of alleged double counting. First, he argues that the district court used its dangerous-weapon finding both to determine the base offense level and to increase the offense level under § 2A2.2(b)(2). Although Duke's use of a dangerous weapon (i.e., the table) indeed appears to have factored into his base offense level and the offense level increase, this double counting is permissible. In response to "a circuit conflict regarding whether the four-level enhancement in subsection (b)(2)(B) of § 2A2.2 (Aggravated Assault) for use of a dangerous weapon during an aggravated assault is impermissible double counting," the Sentencing Commission amended § 2A2.2, explaining that "both the base offense level of level 15 and the weapon use enhancement in subsection (b)(2) shall apply to aggravated assaults that involve a dangerous weapon with intent to cause bodily harm." U.S. Sentencing Guidelines app. C, vol. II, amend. 614, at 116. Before the Sentencing Commission amended § 2A2.2, when we were "not persuaded that this guideline was written in contemplation of [a] situation . . . where a 'dangerous weapon' is not dangerous at all unless it is 'otherwise used,'" we held that it was impermissible double counting to consider such a "weapon" in calculating both the base offense level and the enhancement in § 2A2.2(b)(2). *Farrow*, 198 F.3d at 194–95. However, as Amendment 614 explains above, the Sentencing Commission has since taken a different view—that it is permissible double counting to consider the use of a dangerous weapon in calculating both the base offense level and the enhancement in § 2A2.2(b)(2). In light of this clear guidance from the Sentencing Commission, we hold that such double counting, which took place in Duke's case, is permissible.

Second, Duke argues that considering the victim's bodily injury to give a three-level enhancement under § 2A2.2(b)(3)(A) and a two-level enhancement under § 2A2.2(b)(7) was impermissible double counting. Section 2A2.2(b)(3)(A) provides for a three-level enhancement "[i]f the victim sustained bodily injury." As stated above, § 2A2.2(b)(7) provides for a two-level enhancement "if the defendant was convicted under 18 U.S.C. § 111(b) or § 115." Duke was

convicted of § 111(b), which provides that "[w]hoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both." R. 31 (Judgment at 1) (Page ID #166).

It appears that Duke's enhancements under §§ 2A2.2(b)(3)(A) and 2A2.2(b)(7) were both based on his infliction of bodily harm. However, "a court may impose two enhancements arising from the same conduct, provided the enhancements 'penalize distinct aspects of [a defendant's] conduct and distinct harms.'" *United States v. Sweet*, 776 F.3d 447, 451 (6th Cir. 2015) (quoting *United States v. Smith*, 516 F.3d 473, 476 (6th Cir. 2008)). Such is the case here. Sections 2A2.2(b)(3)(A) and 2A2.2(b)(7) punish distinct aspects of Duke's conduct. Section 2A2.2(b)(3)(A) enhances the defendant's offense level if "the victim sustained bodily injury." By contrast, § 2A2.2(b)(7) serves "'to ensure punishment at or near the maximum penalty for the most egregious conduct covered by' 18 U.S.C. §§ 111 and 115." U.S. Sentencing Guidelines § 2A2.2 cmt. (quoting 21st Century Department of Justice Appropriations Authorization Act, Pub. L. No. 107-273, § 11008(e)(2)(D), 116 Stat. 1758 (2002)). Although "bodily injury" is an aspect of the enhanced-penalty provision of § 111, that statute generally targets assault on officers and employees of the United States. 18 U.S.C. § 111(a) (citing 18 U.S.C. § 1114). Because the assault of an officer or employee of the United States is distinct from general infliction of bodily harm, application of §§ 2A2.2(b)(3)(A) and 2A2.2(b)(7) did not constitute impermissible double counting.

Last, Duke argues that the district court impermissibly double counted when it "score[d] the base offense for the crime of conviction" under § 2A2.2 and increased the offense level under § 3A1.2 because the victim was a government officer or employee. Appellant's Br. at 19–20. Indeed, the PSR calculated Duke's base offense level because he was convicted under § 111, which prohibits assaulting government officers and employees. A.R. 6-1 (PSR ¶ 14). The district court also increased Duke's offense level by two pursuant to § 2A2.2(b)(7) and by six pursuant to § 3A1.2(b) because the victim was a government officer or employee. A.R. 6-1 (PSR ¶¶ 17–18). However, the Sentencing Commission has made clear that "[i]f subsection

(b)(7) applies, § 3A1.2 (Official Victim) also shall apply." U.S. Sentencing Guidelines § 2A2.2 cmt. n.4. And if the Sentencing Commission intended §§ 2A2.2(b)(7) and 3A1.2 to apply with respect to the same conduct, it follows that the Commission intended §§ 3A1.2 and 2A2.2 as a whole to apply with respect to the same conduct as well. Because "the Sentencing Commission intended to attach multiple penalties to the same conduct," *Battaglia*, 624 F.3d at 351, this is permissible double counting. *See United States v. Swanson*, No. 96-5383, 1996 WL 678227, at *2 (6th Cir. Nov. 21, 1996). Therefore, we hold that the district court did not impermissibly double count in determining Duke's sentence.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the sentence below.