NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0516n.06

Case No. 21-4204

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| | ) | **FILED** |
| | ) | Dec 13, 2022 |
| UNITED STATES OF AMERICA, | ) | DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| BRYAN WOLFE, | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: LARSEN, DAVIS, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** Bryan Wolfe pleaded guilty to charges of possession of a firearm after being convicted of a misdemeanor crime of domestic violence and multiple counts of making interstate threatening communications. The district court sentenced Wolfe to an above-Guidelines sentence of 46 months of imprisonment. Wolfe appeals his sentence. Finding no error, we affirm.

**I.**

This action arises from Wolfe threatening children and adults in Ohio and Michigan after engaging in online arguments on Facebook.

On November 2, 2019, Wolfe sent threatening messages to victim one, T.J., via Facebook. Wolfe, using an account under the name of "Dolf Hidler," began sending T.J. pictures of her family members and threatened to kidnap them. (R. 48, Page ID 169). Specifically, Wolfe stated:

> Not sure which of your family. Maybe you yourself. But I will take one from you. Maybe that little baby. Snatch her from your presence. Or maybe the ugly ass boy. He looks like he came out of a tube. Bitch the clock is ticking. You can take this as a joke and should leave my CUNTry (sic) and go back to chucking spears. But I will take one. Laugh your inferior black asses off. Think it's a game. But don't do your ghetto crying after the fact. Ps (sic) your entire family are inferior and the worthless stank hoe bitches are inferior. And we won't be extinct but I laugh every time one of you is killed. Tick tock bitch.

(*Id.*). T.J. and her family members are African American.

On September 8, 2020, Wolfe sent victim two, E.H., threatening messages via Facebook. Wolfe, this time using an account under the name "Shaun Wolfie", threatened to burn a Quran in E.H.'s yard and sent him a picture of E.H.'s home, followed by a picture of a bonfire. Wolfe also communicated with E.H. using slurs and derogatory terms, stating "Fuck Mohammed," and referring to him as "haji" and "faggot." (*Id.* at 170).

On September 13, 2020, Wolfe sent threatening messages to victim three, J.M., via Facebook. Wolfe, again using the "Shaun Wolfie" profile name, threatened to kill J.M.'s children. Specifically, Wolfe stated: "And it's why you and your nigger will swing from knots cunt. He will be saying 'I can't breath' (sic) while I am drinking a beer and you're bleeding watching it all." (*Id.*). Wolfe also sent J.M. a picture of her children, who are biracial (African American and Caucasian).

After receiving reports of these threats, on September 18, 2020, law enforcement officers executed a federal search warrant at Wolfe's home. During the search, they recovered a Smith and Wesson M&P 45 Shield Pistol on a mantle in the living room. Because Wolfe had been previously convicted of a misdemeanor of domestic violence, he was prohibited from possessing a firearm.

A federal grand jury returned a superseding indictment charging Wolfe with one count of illegally possessing a firearm after having been convicted of a misdemeanor crime of domestic

violence in violation of 18 U.S.C. § 922(g)(9) ("Count 1"), and three counts of making interstate threatening communications in violation of 18 U.S.C. § 875(c) ("Counts 2 through 4"). Wolfe executed a written plea advisement, and on August 26, 2021, he pleaded guilty to all charges in the superseding indictment. During the change of plea hearing, the Government advised Wolfe and the district court that it anticipated requesting an upward variance at sentencing.

1.  Presentence Investigation Report

The Presentence Investigation Report ("PSR") assigned a base offense level of 14 for Count 1 under U.S.S.G. § 2K2.1(a)(6). The base offense level for each of Counts 2 through 4 was 12, with a three-level hate-crime enhancement pursuant to U.S.S.G. § 3A1.1, bringing the adjusted offense level to 15. Wolfe also received a four-level multiple-count enhancement, resulting in a combined adjusted offense level of 19. The PSR recommended a three-level reduction for acceptance of responsibility, bringing Wolfe's final offense level to 16.

Although Wolfe had a lengthy criminal history, including convictions for assault, disorderly conduct, aggravated assault, menacing, driving under the influence, and domestic violence, his criminal history category was II. Based on an offense level of 16 and criminal history category II, Wolfe's advisory Guidelines range was 24 to 30 months of imprisonment.

Wolfe objected to the multiple-count enhancement, arguing that because Counts 2 through 4 involved different victims and were not part of the same transaction, they could not be grouped. Wolfe also argued for a downward variance based on, *inter alia*, his "diminished mental capacity."

2.  Sentencing Hearing

On December 14, 2021, Wolfe filed a sentencing memorandum requesting a sentence at the low end of the "proper sentencing guideline range," citing, *inter alia*, his mental health as

grounds for imposing a lower sentence. (R. 50, PageID 199–200). On December 15, 2021, the Government filed its sentencing memorandum and requested an upward variance.

On December 16, 2021, the district court sentenced Wolfe. The court adopted the PSR, overruling Wolfe's objection to the multiple-count enhancement. Wolfe did not object to the PSR on any other grounds.

The district court noted that it had reviewed the sentencing memoranda from Wolfe and the Government. The court also discussed the § 3553(a) sentencing factors with Wolfe to ensure he understood their application. Wolfe's attorney argued for the lowest sentence available under the Guidelines range, noting that although Wolfe was a high achiever in his career, he had unresolved mental health issues. The Government requested that the court vary upward and impose a 48-month sentence based on the nature and circumstances of the offenses in which Wolfe made serious threats against racial and ethnic minorities, as well as Wolfe's history and characteristics. The Government argued that such a sentence would properly reflect the seriousness of the offense and provide adequate deterrence.

When Wolfe allocuted, he apologized, claiming he had ruined his life, as well as the lives of his family and of the victims. Wolfe indicated that his life had been difficult during the two years before his crimes and said, "I can't give an honest answer why I did it." (R. 65, PageID 296–97). After hearing from Wolfe, the court advised that its sentence was based, in significant part, on the nature and circumstances of Wolfe's actions and the impact on his victims, stating that "[h]aving a threat against [a parent] would be bad enough, but having a threat against one of their children and in feeling kind of helpless that they can't protect their own child and not knowing where the threat's coming from or why the threat is coming" was difficult to comprehend. (*Id.* at 297–98). The court also noted that the racial nature of the threats added to the difficulty victims

likely faced when trying to deal with the threats. Additionally, the court expressed that "one of the things that really bothered [the court] about this was that it took a lot of work and effort on [Wolfe's] part to investigate—this wasn't like a one-time thing." (*Id.* at 298).

The district court acknowledged Wolfe's history and characteristics, including his difficulties at home and at work, and noted his criminal history. The court concluded that Wolfe was a danger to the community based on the "vile fashion" of his actions toward strangers and that it was necessary to protect "not only [Wolfe's] safety but the safety of the community and to ensure that something like this won't happen again."

As such, the court noted that an upward "departure" was appropriate based on the facts and circumstances of the case and sentenced Wolfe to 46 months of imprisonment, stating that this was sufficient to deter Wolfe from committing similar acts in the future. (*Id.* at 300–301). The court further recommended that Wolfe receive mental health treatment while incarcerated. Wolfe did not lodge any additional objections to the sentence.

The court entered the judgment and filed its statement of reasons. In the statement of reasons, the court indicated that it had imposed a sentence outside the applicable sentencing Guidelines range and determined that a "variance" was appropriate. As it stated during its oral pronouncement of the sentence, the court based its reasoning for a variance on the nature and circumstances of the offense and victim impact, as well as the need to afford adequate deterrence to criminal conduct and to protect the public from further crimes by Wolfe. Wolfe timely appealed.

## II.

Wolfe presents the following issues on appeal: (1) whether the court's sentencing of Wolfe represented a "departure" rather than a "variance" from the Guidelines such that advance notice was required under Federal Rule of Criminal Procedure 32(h); (2) whether the court's calculation

of his sentence based on the multiple-count and hate-crime enhancements under the Guidelines was erroneous; (3) whether the district court properly considered Wolfe's mental health and his efforts at rehabilitation while incarcerated in its sentencing decision; and (4) whether the court's application of the multiple-count and hate-crime enhancements violated the Fifth Amendment prohibition against double jeopardy. The second and third issues raised by Wolfe are appropriately addressed under an inquiry into the reasonableness of Wolfe's sentence. For the reasons explained below, we affirm Wolfe's sentence.

## A.

The first issue is whether Wolfe's sentence constituted a "departure" or a "variance" from the Guidelines. This is a question of law that we consider *de novo*. *United States v. Denny*, 653 F.3d 415, 419 (6th Cir. 2011).

We have explained the difference between a departure and a variance as follows:

> "Departure" is a term of art under the Guidelines and is distinct from "variance." A Guidelines "departure" refers to the imposition of a sentence outside the advisory range or an assignment of a criminal history category different than the otherwise applicable category made to effect a sentence outside the range. Importantly, a departure results from the district court's application of a particular Guidelines provision, such as § 4A1.3 or § 5, Part K. A "variance" refers to the selection of a sentence outside of the advisory Guidelines range based upon the district court's weighing of one or more of the sentencing factors of § 3553(a). While the same facts and analyses can, at times, be used to justify both a Guidelines departure and a variance, the concepts are distinct.

*United States v. Grams*, 566 F.3d 683, 686–87 (6th Cir. 2009) (per curiam) (internal citations omitted).

The distinction between the two concepts matters because a departure triggers certain notice requirements. Rule 32(h) of the Federal Rules of Criminal Procedure requires district courts to provide the parties with reasonable notice that it is considering a departure from the Guidelines

"on a ground not identified for departure either in the presentence report or in a party's prehearing submission." Fed. R. Crim. P. 32(h). This notice provision does not apply when the district court applies a "variance" based on the sentencing factors of 18 U.S.C. § 3553(a). *See Irizarry v. United States*, 553 U.S. 708, 714–16 (2008). Therefore, if the district court applied an upward "departure," there would be a question as to whether Wolfe was provided with reasonable notice of the intent to seek such a departure. We need not reach this question, however, because the record shows that the district court varied from the Guidelines range; it did not depart.

We first review the oral sentence pronounced by the district court to determine whether it intended to apply a departure or variance. *See United States v. Penson*, 526 F.3d 331, 334 (6th Cir. 2008) ("[W]hen an oral sentence conflicts with the written sentence, the oral sentence controls.") (quotation and citation omitted). The rationale for giving an oral sentence primacy is that "criminal punishment 'affects the most fundamental human rights,'" and as such, "'[s]entencing should be conducted with the judge and defendant facing one another and not in secret.'" *Id.* (quoting *United States v. Villano*, 816 F.2d 1448, 1452 (10th Cir. 1987) (en banc)). The terminology used during sentencing matters, but we have observed that "no specific magic words are necessary to render a sentence reasonable." *United States v. Davis*, 458 F.3d 505, 507 (6th Cir. 2006).

The district court's decision to sentence Wolfe to a sentence longer than that recommended under the Guidelines does not necessarily mean the court departed from the Guidelines even though the court used the word "departure." The question of whether the district court made a variance or departure ultimately comes down to its grounds for deviating; that is, whether the court sentenced Wolfe above the Guidelines range based on § 4A1.3 or Part K, § 5 of the Guidelines, or based on the § 3553(a) factors. *Denny*, 653 F.3d at 420. Congress has instructed that "a court shall impose a sentence sufficient, but not greater than necessary," and in doing so, the court is to

consider certain factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the seriousness of the offense," the need "to promote respect for the law," the provision of "just punishment," the protection of the public, and the need to "afford adequate deterrence." 18 U.S.C. § 3553(a)(1), (a)(2)(A)–(C). These factors allow the court "a 'much broader range of discretionary decisionmaking' than the discretion provided by the Sentencing Guidelines." *Denny*, 653 F.3d at 420 (quoting *United States v. Stephens*, 549 F.3d 459, 466–67 (6th Cir. 2008)).

This case is similar to *Denny*. In *Denny*, although the district court used the term "departure" in speaking about the defendant's sentence, we determined that the district court's failure to use the word "variance" was not conclusive evidence that the court had departed from the Guidelines range, rather than varied, because the district court made clear references to the § 3553(a) factors in fashioning a sentence. *See id.* at 420–21. Here, the district court also did not use the term "variance" and used the term "departure" one time.

In sentencing Wolfe, the court did not identify any of the numerous departure provisions in the Guidelines. And, in fact, Wolfe does not identify any departure provision that he claims the district court relied on in sentencing him above the Guidelines range. The court focused on the § 3553(a) factors. In its discussion of the nature and characteristics of the offense, the court discussed the effort Wolfe put into threatening his victims, his use of racial and ethnic slurs, and the fact that he threatened children. The court also discussed Wolfe's personal history and characteristics, including his difficulties with his family, job, and home life, as well as his criminal history. The court also recognized its need to protect the community and to prevent Wolfe from committing this type of behavior again. Based on the oral sentence pronouncement, we find that the district

court intended to vary above the Guidelines range rather than depart, thus rendering Rule 32(h)'s notice requirement inapplicable.

The district court's written judgment also supports this conclusion. In its statement of reasons,[1] the court indicated that it was adopting the PSR without change and marked the box next to the statement specifying it had "imposed a sentence otherwise outside the sentencing guideline system (**i.e., a variance**)." (R. 56, PageID 265–66 (emphasis added)). The district court left Section V of the form, related to departures, blank and filled in Section VI related to variances, noting that it was relying on the following § 3553(a) factors in sentencing: the nature and circumstances of the offense (including victim impact), the affording of adequate deterrence to criminal conduct, and the protection of the public from further crimes of Wolfe.

B.

We construe Wolfe's claims regarding the court's calculation of his Guidelines range, including its application of the multiple-count and hate crime enhancements, and the court's consideration of his mental health condition during sentencing, as challenging the reasonableness of Wolfe's sentence.

1. Procedural Reasonableness

We first review Wolfe's sentence for procedural reasonableness, which is satisfied as long as "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the

---

[1] We have advised caution when looking to a statement of reasons, which has been intended to serve a record-keeping function and thus may not be "crafted with the same precision that judges heed during the oral sentence." *Denny*, 653 F.3d at 422. For this reason, we do not rely solely on the statement of reasons to divine the district court's intent but rather view the statement of reasons as further support of an unambiguous oral sentencing determination.

Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007); *see also Denny*, 653 F.3d at 423.

We review the district court's legal conclusions *de novo*, and its factual findings for clear error.

*See United States v. Henry*, 819 F.3d 856, 864 (6th Cir. 2016) (citing *United States v. Taylor*, 648

F.3d 417, 431 (6th Cir. 2011)).

When the district court gives the parties an opportunity to raise errors after pronouncing

the sentence, and the appealing party fails to do so, we review for plain error. *United States v.

Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004). Under plain error review, Wolfe must show an

"(1) error (2) that 'was obvious or clear,' (3) that 'affected [Wolfe's] substantial rights' and (4) that

'affected the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v.

Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (quoting *United States v. Gardiner*, 463 F.3d 445, 459

(6th Cir. 2006)). Plain error will only be found in "'exceptional circumstances' . . . 'where the

error is so plain that the trial judge . . . [was] derelict in countenancing it.'" *Id.* (quoting *Gardiner*,

463 F.3d at 459).

Wolfe claims that his sentence is procedurally unreasonable because the district court:

(1) erred in applying the multiple-count enhancement, (2) applied the wrong standard for the hate-

crime enhancement, and (3) did not properly consider his mental condition and efforts at

rehabilitation while incarcerated. We address each of these grounds in turn.

a.  Multiple-count enhancement

The district court did not err in applying the multiple-count enhancement under the

Guidelines, which provide "the starting point and the initial benchmark" for the district court when

crafting a sentence. *Gall*, 552 U.S. at 49. The "district court should begin all sentencing

proceedings by correctly calculating the applicable Guidelines range." *Id.* (citing *Rita v. United

States*, 551 U.S. 338, 347–48 (2007)). Then, after allowing the parties to argue for a sentence they

deem appropriate, the district court should consider the § 3553(a) factors. *See id.* at 49–50. After determining the appropriate sentence based on the facts presented, the district court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* at 50.

First, the district court did not miscalculate Wolfe's Guidelines range when it adopted the PSR and made an initial finding that Wolfe had a total offense level of 16 and a criminal history category of II. Indeed, the district court "must follow the clear and unambiguous language of the Sentencing Guidelines when interpreting and applying specific provisions." *United States v. Young*, 266 F.3d 468, 484 (6th Cir. 2001). In his objection to the PSR and at sentencing, Wolfe argued that because the counts involved different victims and were not part of the same transaction, they could not be grouped under § 3D1.2, which meant that § 3D1.3 would not apply, and as such, the calculation of the combined adjusted offense level under § 3D1.4 was incorrect. (PSR (Sealed), R. 48, PageID 186–87). The district court found that the counts could not be grouped, and as such, each count was its own group, though grouping counts was different from determining the combined adjusted offense level under § 3D1.4.

The district court accurately determined that the counts could not be grouped. *See, e.g.*, U.S.S.G. Commentary to Ch. 3, Part D, Illustration 1 ("Defendant A was convicted of four counts, each charging robbery of a different bank. Each would represent a distinct Group."). This does not impact the application of § 3D1.4, which provides that "[t]he combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level" by a specific number of units based on the increase in offense level. The group with the highest offense level is assigned one unit, and an additional unit is counted "for each Group that is equally serious or from 1 to 4 levels less serious." U.S.S.G. § 3D1.4(a). Application

Note 2 confirms this procedure for determining the combined offense level when faced with more than one Group (or count):

> First, identify the offense level applicable to the most serious Group; assign it one Unit. Next, determine the number of Units that the remaining Groups represent. Finally, increase the offense level for the most serious Group by the number of levels indicated in the table corresponding to the total number of Units.

Wolfe has failed to show that the district court made an error in applying the multi-count enhancement. To the contrary, it appears the court followed the Guidelines exactly. Count 1 had an offense level of 14 and Counts 2 through 4 each had offense levels of 15 after the hate-crime enhancement was applied. Counts 2 through 4 were the most serious with an offense level of 15. Thus, one unit was added to <u>one</u> of these counts, and because all three counts had an offense level of 15, it did not matter which group received that one unit. Then, one unit was added for each of the remaining counts because the seriousness of each remaining count was within one to four levels less serious, bringing the combined adjusted offense level to 19.

Second, Wolfe's argument that the court double-counted levels by adding one unit to each of Counts 2 through 4 fails. Double counting "'occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways.'" *United States v. Duke*, 870 F.3d 397, 404 (6th Cir. 2017) (quoting *United States v. Farrow*, 198 F.3d 179, 193 (6th Cir. 1999)). Even though "this Circuit retains [a] dim view of double counting," not all double counting is impermissible. *United States v. Smith*, 196 F.3d 676, 681 (6th Cir. 1999). We have identified "two situations where double counting is permissible: 1) where 'the Sentencing Guidelines expressly mandate double counting . . . through the cumulative application of sentencing adjustments,' and 2) 'where it appears that Congress or the Sentencing Commission intended to attach multiple penalties to the same conduct.'" *United States v. Clark*, 11 F.4th 491, 495 (6th Cir. 2021) (quoting

*Farrow*, 198 F.3d at 194). Generally, we first determine whether double counting occurred and, if so, we determine whether any such double counting was impermissible. *Duke*, 870 F.3d at 404.

Wolfe argues that the district court double counted by adding one unit for each of the interstate threatening communication counts when calculating the multiple-count enhancement under § 3D1.4. Simply put, this is not double counting because the same aspect of Wolfe's conduct was not factored into his sentence in two separate ways through application of the multiple-count enhancement. There were four separate counts to consider in calculating the combined adjusted offense level under § 3D1.4. Had Counts 2 through 4 been grouped together, Wolfe's combined adjusted offense level would have been lower. But, as discussed above, Counts 2 through 4 could not be grouped together because they involved different victims and separate transactions.

b.    Hate-crime enhancement

Next, Wolfe argues that the district court did not apply the appropriate standard in applying the § 3A1.1(a) hate-crime enhancement. Because Wolfe did not object to the application of the hate-crime enhancement, we review for plain error. *United States v. Vonner,* 516 F.3d 382, 386 (6th Cir. 2008) (en banc). The hate-crime guideline provides:

> If the finder of fact at trial or, in the case of a plea of guilty or *nolo contendere*, the court at sentencing determines beyond a reasonable doubt that the defendant intentionally selected any victim or any property as the object of the offense of conviction because of the actual or perceived race, color, religion, national origin, ethnicity, gender, gender identity, disability, or sexual orientation of any person, increase by **3** levels.

U.S.S.G. § 3A1.1(a).

The appropriate standard for applying the hate-crime enhancement is beyond a reasonable doubt. *Id.* Although the district court did not explicitly use the words "beyond a reasonable doubt," the court adopted the PSR and noted that Wolfe intentionally selected his victims based on race, religion, and/or ethnicity, asking "I mean, why would you pick on a black individual or a Muslim

individual, you have an idea of why you would search that out and do that" and noting that threats "based on race or ethnic background" are more difficult for the victims. (R. 65, PageID 298).

The record supports a finding that Wolfe intentionally selected his victims based on their race, religion, and/or ethnicity beyond a reasonable doubt. Wolfe's threats appear in detail in both the plea advisement and the PSR. Wolfe initialed each page of the plea advisement and signed it. When asked, Wolfe confirmed that he went over the facts as listed in the plea advisement with his attorney and that the conduct listed in the plea advisement explained his conduct. He further indicated that he did not have any corrections. Wolfe did not object to the PSR's application of the hate-crime enhancement or the facts supporting that enhancement. The district court adopted the PSR, which included the hate-crime enhancement in its calculations, without change. Thus, there is sufficient evidence in the record establishing beyond a reasonable doubt that Wolfe intentionally selected his victims based on their race, religion, and/or ethnicity. U.S.S.G. § 3A1.1(a). As such, the district court did not plainly err in applying the hate-crime enhancement.

c.        Consideration of mental health and post-conviction rehabilitation

Wolfe also argues that the district court failed to fully consider the impact of his mental health and post-conviction rehabilitation efforts when fashioning his sentence. Specifically, Wolfe claims that the court did not address these points on the record in a way that allows for meaningful appellate review.

The Supreme Court has held that "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita*, 551 U.S. at 356 (citing *United States v. Taylor*, 487 U.S. 326, 336–37 (1988)). Additionally, "when 'a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered

the defendant's argument and that the judge explained the basis for rejecting it.'" *United States v. Jones*, 489 F.3d 243, 251 (6th Cir. 2007) (quoting *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006)). There is no mandate on exactly what level of detail is required from the district court, and instead "we ask whether the sentencing judge provided an explanation for the sentence sufficient for this court to discern that the judge weighed the relevant factors and did not 'simply selec[t] what the judge deem[ed] an appropriate sentence without such required consideration.'" *United States v. Coleman*, 835 F.3d 606, 616 (6th Cir. 2016) (quoting *United States v. Moon*, 513 F.3d 527, 539 (6th Cir. 2008)).

We discern no error. Wolfe's mental health condition was addressed in the PSR, which detailed Wolfe's previous suicide attempt, and in Wolfe's sentencing memorandum, in which Wolfe claimed he "suffered from mental instability" and "periodically attended mental health counseling, including medication[.]" (R. 48, PageID 178; R. 50, PageID 200). The court noted at sentencing that it had reviewed these documents. The court, in sentencing Wolfe, recommended that Wolfe receive mental health treatment both while incarcerated and while on supervised release. Thus, Wolfe has failed to show that the court did not consider his mental health condition in fashioning the sentence.

2. Substantive Reasonableness

Having determined that Wolfe's sentence was procedurally reasonable, we now review Wolfe's sentence for substantive reasonableness, considering the "totality of the circumstances, including the extent of any variance from the Guidelines range," the weight placed on the § 3553(a) factors in sentencing, and the length of the sentence. *Gall*, 552 U.S. at 51; *see also United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). Substantive reasonableness focuses on whether a "sentence is too long (if a defendant appeals) or too short (if the government appeals)." *Rayyan*,

885 F.3d at 442. "The point is not that the district court failed to consider a factor or considered an inappropriate factor; that's the job of procedural unreasonableness." *Id.* at 442. Rather, substantive unreasonableness is "a complaint that the court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual." *Id.* Our review is highly deferential, and "the fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51. Because Wolfe's sentence falls outside the Guidelines range, there is no presumption of reasonableness. *See Rita*, 551 U.S. at 341.

Wolfe's sentence was substantively reasonable. The district court did not arbitrarily select Wolfe's sentence but instead based its decision on the § 3553(a) factors, with particular focus on the seriousness of the offense, the impact on the victims, and Wolfe's criminal history. Importantly, the court also specified deterrence and protection of the community as reasons for its sentencing decision. Wolfe's claim that the court focused too much on deterrence in light of Wolfe's mental health condition is unavailing because the court considered Wolfe's mental health in fashioning a sentence. Wolfe argues that "[i]t is incorrect to assume that punishment and deterrence factors of 18 USC 3553 are no different for those with mental illness than those with full rational capabilities." Yet he provides no jurisprudential or evidentiary support for this idea. The district court, having reviewed all the evidence in the record and interacting with Wolfe, was in the best position to determine an appropriate sentence. *See Gall*, 552 U.S. at 51 ("The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record.").

C.

Wolfe's argument that the court violated his double jeopardy rights by applying the multiple-count and hate-crime enhancements is unavailing. Because Wolfe raised this argument for the first time on appeal, we review the district court's decision for plain error. *See United States v. Wheeler*, 330 F.3d 407, 413 (6th Cir. 2003) (citing *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998)).

The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Supreme Court has "found double jeopardy protections inapplicable to sentencing proceedings . . . because the determinations at issue do not place a defendant in jeopardy for an 'offense[.]'" *Monge v. California*, 524 U.S. 721, 728 (1998) (internal citations omitted); *see Wheeler*, 330 F.3d at 413. The same rule applies to sentencing enhancements (or adjustments), which are "not to be viewed as either a new jeopardy or additional penalty," but rather as "a stiffened penalty" for the crime. *Monge*, 524 U.S. at 728. Indeed, "double jeopardy concerns are not implicated when . . . a district court simply applies multiple guidelines to determine the appropriate sentence for an offense of conviction." *Wheeler*, 330 F.3d at 413.

Because the district court simply applied the Guidelines in determining Wolfe's sentencing range, there is no violation of double jeopardy in applying the multiple-count and hate-crime enhancements.

**III.**

Based on the foregoing, we **AFFIRM** Wolfe's sentence.